SMITH v. MUSGROVE.

1. AUTOMOBILES—INTERSECTION—TRAFFIC LIGHT—NEGLIGENCE.

Evidence presented in action against 2 motorists who collided in northeast quadrant of intersection and injured plaintiff, a passenger in a southbound car which was stopped for a red traffic light *held*, sufficient to present for consideration of jury the issue of negligence of westbound appellant motorist, where such issue was dependent upon the weight to be given the testimony adduced and the credibility of the witness who gave it.

2. APPEAL AND ERROR—REQUESTS TO CHARGE—INSTRUCTIONS.

It was not error on the part of the trial court to omit to give requests to charge in the terms as given, where the court's charge in its entirety encompassed the substance of the properly applicable parts of the requests.

3. SAME—ADMISSION OF TESTIMONY.

Admission of "estimate" of appellant's speed as he approached intersection where he collided first with codefendant's vehicle and then with vehicle in which plaintiff was a passenger *held*, not reversible error under record presented which showed the witness had some difficulty in understanding the meaning of "estimate."

4. AUTOMOBILES—INTERSECTION—SPEED—RECKLESS DRIVING.

Instruction given in action arising from collision between car driven by westbound appellant and his northbound codefendant at an intersection and thereafter colliding with southbound car

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 735, 1013, 1017.
[2] 53 Am Jur, Trial §§ 527, 528.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic § 984.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 1018.
[5, 6] 5 Am Jur 2d, Appeal and Error §§ 624–627, 719.

in which plaintiff was a passenger and which had been stopped for a traffic light, which included quotation from statute regulating speed and reckless driving *held,* proper (CLS 1956, § 257.626).

Per KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and O'HARA, JJ.

5. APPEAL AND ERROR—INSTRUCTIONS.

Reversible error in the matter of giving instructions to the jury must be that of the trial judge and not error to which the aggrieved appellant has contributed by planned or neglectful omission on his part.

6. SAME—IMPROPER ARGUMENT TO JURY—CORRECTIVE REQUEST TO CHARGE.

Improper argument of plaintiff's counsel during the opening presentation of plaintiff's case, to which the attention of the trial judge was directed, characterized by the judge as improper argument and case proceeded without further difficulty or pertinent objection, the objection having been made at a time when there was ample opportunity to submit a forcefully cautionary request to charge or move for mistrial and a failure to do either *held,* not to have resulted in error requiring reversal, the importance of such errors being judged in part by the attitude of counsel toward them when time remains to set things right in the jury room.

Per KAVANAGH, C. J., and BLACK, SOURIS, and SMITH, JJ.

Appeal from Wayne; Bowles (George E.), J. Submitted November 7, 1963. (Calendar No. 59, Docket No. 49,756.) Decided February 3, 1964.

Case by John Smith against Hubert C. Musgrove and James M. Peabody for personal injuries sustained in automobile collision on June 28, 1957. Verdict and judgment for plaintiff. Defendant Peabody appeals. Affirmed.

*Zeff & Zeff* (*Edward Grebs,* of counsel), for plaintiff.

*Carl F. Davidson,* for defendant Peabody.

O'HARA, J. (*dissenting*). This is an automobile negligence case. Plaintiff was a passenger in a car headed south which was stopped for a red traffic light at the intersection of Mt. Elliott and East Grand Boulevard in the city of Detroit.

Defendant-appellant Peabody was approaching the intersection from the east on Grand Boulevard. Codefendant below, Musgrove, was traveling north on Mt. Elliott. Peabody and Musgrove collided in the northeast quadrant of the intersection. The Musgrove car, after the impact, crashed into the vehicle in which plaintiff was a passenger, and plaintiff was seriously injured. Suit on his behalf was brought against Peabody and Musgrove jointly and severally. A joint and several verdict of $30,000 for plaintiff resulted. Defendant Peabody alone appeals. He claims: (1) a verdict should have been directed in his favor because there was no actionable negligence shown against him; (2) proper requests to charge were refused him by the trial court; (3) inadmissible testimony relating to his speed prior to the collision was received over objection; (4) inflammatory argument was made by plaintiff's counsel, characterized as "improper" by the trial judge, which argument was to have been the subject of cautionary instruction and such instruction was not given; (5) erroneous instruction as to the applicability of the reckless driving statute* to his driving was given.

The first claimed error is untenable. There was testimony from which a jury could have inferred actionable negligence on appellant's part. Quoting it in detail would add nothing to established case precedent. As his brief urges this proof may not have been as persuasive as the proof of the codefendant's negligence. The issue, however, was the

---

* CLS 1956, § 257.626 (Stat Ann 1955 Cum Supp § 9.2326).

weight of that testimony and the credibility of the witness who gave it. These questions were for the jury.

The second claim of error will not support reversal. It is well established that requests to charge need not be given in the language in which they are submitted. *Knickerbocker* v. *Samson* (not Simpson as cited), 364 Mich 439, 449, obtains:

"No lawyer is entitled to demand that a specific [requested] charge be given verbatim."

The court's charge in its entirety encompassed the substance of the properly applicable parts of the requests.

The third claimed reversible error is concerned with the admission of an "estimate" of appellant's speed in approaching the intersection. The concerned testimony is herewith set forth:

"*Q*. Answer this yes or no. Can you estimate how fast that automobile was going from your observation?

"*A*. It seemed to my estimation—

"*The Court:* Wait, wait. He is asking if you can estimate it and that can be answered either yes or no.

"*A*. No.

"*Q*. (By Mr. Zeff): You cannot estimate how fast he was going?

"*Mr. Halsey:* That question has been asked and answered, your Honor.

"*A*. To me it seemed to be about 40 miles an hour.

"*Mr. Halsey:* Wait a minute, sir. The question—

"*The Court:* The question is could you estimate the speed of the Oldsmobile. Could you estimate how fast it was going?

"*A*. Approximately, yes, sir.

"*The Court:* I think he was confused, counsel, on the other one. Go ahead.

"*Q*. (By Mr. Zeff): Could you tell us how fast he was going, sir?

"*A*. About 40 miles an hour."

The truncated and self-serving excerpts set forth in the respective appendices were irreconcilable and required our time consuming reference to the full transcript. A reading of all the witness's testimony clearly revealed that he had been having difficulty understanding the questions asked him. The trial judge who saw and heard the witness and observed his demeanor was well within his prescribed supervisory control of the trial when he determined that further explanatory questioning as to the witness's understanding of the meaning of "estimate" was in order. There was no error in this incident of the trial.

We reverse the order of treatment of the 2 remaining claims of error (5). Appellant complains of the following instruction:

"I shall now advert to another section of the vehicle code * * * and read a portion thereof:

" 'Any person who drives any vehicle upon a highway * * * carelessly and heedlessly in wilful or wanton disregard of the rights of safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be * * * guilty [of reckless driving].' "

It is his precise point that "there is no indication of any reckless driving on the part of the defendant Peabody in entering the intersection on a green light and within the speed limit," and that the instruction as to possible reckless driving should not have been made as to him [appellant]. Accepting appellant's postulate, the basis for error would, of course, be manifest. The difficulty is, the trial court did not accept, and neither can we, the conditions included in the hypothesis that appellant entered the intersection "on a green light and within the speed limit."

As the trial court pointed out in his opinion on the motion for a directed verdict:

"[The Court:] On examination he [Musgrove] was asked this question and gave this answer:

"'Q. Was it already amber?

"'A. It just changed as I entered the crosswalk.'

"On the following question this occurred:

"'Q. Was the light still green and amber at the time you were crossing the crosswalk?

"'A. Yes.'

"[The Court:] Of course, this testimony is in direct conflict with that of Peabody who claims he had the green light throughout, that is, the green light for Grand Boulevard as opposed to Mt. Elliott."

We previously pointed out herein there was also testimony that appellant was driving "about 40 miles an hour." The legal speed limit on Grand Boulevard at this point was established as 30 miles per hour. The color of the traffic control light as to appellant and his speed as he entered the intersection were disputed questions of fact. An instruction based on appellant's assumptions would have been error. The instruction as given was proper.

The last and most compelling assignment of error (4) is the alleged impropriety of the argument of plaintiff's counsel to the jury, coupled with the court's designation thereof as improper, and the failure to give promised "cautionary instruction." The following excerpt from appellant's appendix contains the error contended for:

"Ladies and gentlemen, in closing I ask that you as triers of the fact, in trying to evaluate what this man deserves, *place yourself in the shoes of Mr. Smith* and ask yourselves whether the emotional, mental and physical ordeal that he went through and has been testified to on that stand, together with the factors of what he was going to have to live with the rest of his life *and ask yourselves whether or not*

*$50,000 is a just evaluation in your own case, whether
or not you think $50,000 would be just compensation
for you* to go through the rest of your life with the
complaints and factual conditions as were brought
out at the time of trial and from this witness stand.
\* \* \*

"*Mr. Halsey:* I object to counsel's inflammatory
argument in that he stated to the jury they should
place themselves in the place of the plaintiff in
evaluating damage. I would have no right as defend-
ant to say, 'Place yourselves in defendant's shoes
if you are going to be stuck with a judgment.' He
has no right and I think it should be clarified by the
court's instructions.

"*The Court:* I will have to cover that. That is
improper argument. \* \* \*

"*The Court:* Yes, I will have to make a cautionary
instruction on it." (Emphasis supplied.)

Plaintiff had contracted poliomyelitis in the in-
terim between the accident and trial. No causal
connection between the accident and the subse-
quently contracted polio was claimed.

The trial court disposed of this claim which was
advanced also in support of the motion for a new
trial as follows:

"As to an appeal to passion and prejudice, the
charge to the jury must be viewed as a whole.
Specifically, however, the jury was warned against
sympathy, and the court at some length, when dis-
cussing negligence, emphasized that the objective
standard had to be used rather than the subjective
standard which plaintiff's counsel urged at 1 point
of his argument. Frankly, the argument in *Elliott
v. A. J. Smith Contracting Co.,* 358 Mich 398, far
exceeded the bounds of the argument in the instant
case where plaintiff's counsel did specifically tell the
jury that plaintiff was not claiming any damages as
a consequence of this accident for polio.

"The whole of the charge to the jury, it is believed, adequately protected all parties insofar as is possible from appeals to passion and prejudice."

The point was not whether plaintiff's counsel improperly suggested or implied that the polio residuals should have been considered in fixing the damages, if any. If he did so, he clearly repudiated it later in his argument. The impropriety consisted in the invitation to the jury to consider what amount, if any, a juror or the jury collectively would award as compensation for himself or themselves for the causally connected injury and damage claimed. Such standard is clearly erroneous. The standard to be used by the jury in fixing damages, if any, is what amount would fairly compensate any given plaintiff, not what a jury member or members would award to himself or themselves under the proof of injury in the case. The argument was reversibly erroneous.

The general rule is found in 53 Am Jur, Trial, § 496, p 401:

"It is, therefore, improper for counsel to appeal to the sympathy of the jury, either directly or indirectly, as, for example, by asking the jury, in a personal injury action, *to put themselves in the plaintiff's place, if they would go through life in the condition of the injured plaintiff.*" (Emphasis supplied.)

Michigan adopted this rule and the following argument, almost indistinguishable in essence from that of plaintiff's counsel in the instant case, was held prejudicial and erroneous:

" 'Is $10,000 too much? Would you fall in that sewer for $10,000 and take your chances; *would you go through life that way?'* " (Emphasis supplied.) *Morrison* v. *Carpenter,* 179 Mich 207, 223 (Ann Cas 1915D, 319.)

The order denying defendant's motion for a directed verdict and for judgment notwithstanding the verdict is affirmed. The order denying the motion for a new trial is reversed and a new trial granted. Appellant may tax costs.

DETHMERS and KELLY, JJ., concurred with O'HARA, J.

BLACK, J. (*for affirmance*). I agree with Justice O'HARA's conclusion that no reversible error is disclosed by specifications of error 1, 2, 3, and 5. I cannot agree that specification 4 calls for reversal. It is suggested instead that the point made by specification 4 has not been raised and saved for review.

We aim, as all great Nestors tell us, to ascertain on review of a law case whether the trial below was tainted by reversible error. There is none here. Error to be reversible must be error of the trial judge; not error to which the aggrieved appellant has contributed by planned or neglectful omission of action on his part. So far, this is elementary. It enters our record with expectation of no refutation by the Brethren standing for reversal.

Now let us come to forceful grips with the occurrences below which are said to constitute *reversible* error.

The admittedly improper argument of plaintiff's counsel, the objection of defense counsel thereto and the ruling of the court that "I will have to make a cautionary instruction on it," all appear in Justice O'HARA's opinion. What does *not* appear therein are these record facts:

*First:* The improper argument was uttered during the opening—not the closing—presentation for plaintiff.

*Second:* It was not repeated after Judge Bowles' ruling was made. The argument of defense counsel,

and the final argument of plaintiff's counsel, proceeded thereafter with no difficulty or objection of present moment.

*Third:* The objection to such improper argument was made and upheld in the absence of the jury; after the members thereof had been excused until the next day. Thus defense counsel was provided, timewise, more than a hurried opportunity to decide his strategy, that is, to decide whether he should submit a forcefully "cautionary" request to charge or move for mistrial. He did neither. Counsel did not even call to attention the judge's manifestly inadvertent omission of such "cautionary" instruction, either at conclusion of the charge or after the jury had retired for deliberation.

I conclude without difficulty that this is another instance where counsel has—for aught we know—chosen to "lie in wait"[1] and take his chance for a favorable verdict, say on strength of his own countering argument, without request to charge or motion for mistrial, and then to renege when the jury has returned an unfavorable verdict.

It is as true today as in 1886, only more so as courts supposedly make effort by even stricter rules to avoid unnecessary retrials, that:

"Two ways are open for counsel for a defendant when the plaintiff's counsel, in his closing argument to a jury, takes positions not warranted by the pleadings and evidence. One is to object to the statements of counsel, and obtain a ruling of the court upon them, as to whether they are proper or improper to be made; the other is to request the

[1] "No fault is found with what the court said, as far as the charge went. Nor was any other instruction on this subject suggested or requested. If the defendants desired fuller instructions, it was their duty to have asked them. Parties cannot remain silent, and thereby lie in wait to ground error, after the trial is over, upon a neglect of the court to instruct the jury as to something which was not called to its attention on the trial, especially in civil cases." *Kinney* v. *Folkerts,* 84 Mich 616, at 624, 625.

court to instruct the jury upon the point, so that any false or erroneous positions may be corrected. The latter is the preferable method, as it conduces to a more orderly and seemly disposition of the matter in dispute, while a resort to the former interrupts argument, and is apt to foment contention and distract the mind of the jury." *Mayo* v. *Wright,* 63 Mich 32, 37, 38.[2]

Counsel for appellant owed to the trial judge clear duty, on peril of loss of right to allege reversible error, either to submit a formal request for corrective instruction on or before commencement of the jury charge the next morning, or at least to bring up at conclusion of the charge the judge's inadvertent omission of such instruction. Even before GCR 1963, 516.2 became effective, such was the well understood requirement if counsel really desired the correction to which he was entitled. See *Reetz* v. *Rigg,* 367 Mich 35, 41, quoting *Gilson* v. *Bronkhorst,* 353 Mich 148, 160n, as follows:

"We judge the importance of errors of such nature, and their consequent effect as being either reversible or harmless, in part by the attitude of counsel toward same when time yet remains to set things right in the jury room."

Counsel cannot now, in my view, allege that omission of the promised instruction constitutes reversible error. See rule quoted from *Kinney* v. *Folkerts, supra,* and the list of cases cited by the Court in *Herbert* v. *Durgis, supra* at 166.

It is appropriate to say, by way of conclusion, that not many, if any, Michigan counsel are better skilled than appellant's counsel, and the gentlemen of his office, at this business of raising and saving questions for review during trial to juries of negligence cases.

---

[2] *Mayo* v. *Wright* is the first of that list of cases cited pertinently by the Court in *Herbert* v. *Durgis,* 276 Mich 158, 166.

In this instance, either of tactically calculated design or careless omission, counsel did not pursue his wholly valid objection to the concededly objectionable argument of opponent counsel. His opportunity for such pursuit was neither pressured as to time nor limited in any way by the trial judge. He had until the next day to make decision whether he should save the question for review or, as the saying goes, burn the bridge and turn exclusively to forensic jury persuasion. Whether by plan or inadvertence he made the latter decision. It is too late now for reversal of that decision.

This case was tried prior to effect of the 1963 rules. The procedure by which such questions are raised and saved for review was much the same as it is now. The principal difference is this:

It is wiser now to act *prior* to, rather than *after*, retirement of the jury. GCR 1963, 516.2 reads:

"2. Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

I would affirm, with costs to plaintiff.

KAVANAGH, C. J., and SOURIS and SMITH, JJ., concurred with BLACK, J.

ADAMS, J., took no part in the decision of this case.