*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JODI LOVELY, Guardian of JEFFREY LOVELY,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
October 29, 2020

No. 349841
Bay Circuit Court
LC No. 17-003478-NF

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

In this no-fault case, plaintiff, Jodi Lovely, as guardian of her son, Jeffrey Lovely, appeals by right the trial court's order denying her motions for judgment notwithstanding the verdict (JNOV) and for a new trial. We affirm.

## I. PERTINENT FACTS

Jeffrey Lovely was seriously injured in a motor vehicle accident in September 2013. After the accident, Jeffrey was diagnosed with a closed-head injury and post-concussion syndrome. Jeffrey was treated at Riversbend Rehabilitation Facility (Riversbend) after the accident. A few years after the accident, Jeffrey was diagnosed with schizophrenia and schizoaffective disorder. Jeffrey's mother, Jodi Lovely, was appointed as his guardian. In 2017, Jodi filed the instant action against State Farm Mutual Automobile Insurance Company, which had been Jeffrey's no-fault insurance provider as to the accident. Jodi alleged that defendant breached the insurance contract by failing to provide reasonable and necessary medical expenses to which Jeffrey was entitled under the Michigan no-fault act, MCL 500.3101 *et seq*. There was no dispute that Jeffrey had been injured and that defendant had paid for the cost of treating his physical injuries through August 2016. Defendant maintained that "car accidents don't cause schizophrenia," that Jeffrey had been profoundly mentally unwell before the accident, and that Jeffrey's psychiatric problems were not caused or exacerbated by the accident. A significant amount of money remains due and outstanding to treatment facilities for Jeffrey's care, mostly to Riversbend.

During trial, four doctors' deposition testimonies were played for the jury. Dr. William MacInnes, Ph.D., a neuropsychologist, testified that he first saw Jeffrey shortly after the accident at the request of the hospital. MacInnes continued to see Jeffrey on an outpatient basis. MacInnes testified that Jeffrey's family reported he had some problems with inappropriate behavior before the accident, but that he seemed to have gotten worse. MacInnes felt that Jeffrey's cognitive problems were insignificant compared to his serious inability to regulate his mood and behavior. MacInnes saw Jeffrey again two years later, after Jeffrey had spent some time in a brain injury rehabilitation program, and found little improvement. MacInnes believed Jeffrey "was suffering from cognitive emotional deficits secondary to closed-head injury" and might be developing "some type of emerging schizophrenic form spectrum kind of disorder as well." MacInnes believed the accident made Jeffrey's pre-existing psychiatric issues worse. MacInnes conceded, however, that he was neither an M.D., a D.O., nor a psychiatrist; and he had not reviewed the entirety of Jeffrey's medical records. MacInnes obtained Jeffrey's history from talking to Jeffrey and Jeffrey's family, and his diagnosis was based on what they told him. MacInnes was unaware of some disturbing behavior in which Jeffrey had engaged before the accident.

Dr. Daniel Duffy, D.O., a board-certified physiatrist,[1] testified that Jeffrey had a traumatic brain injury as a result of the accident and that his behavioral changes were concussion related. However, Duffy agreed that he was not a psychiatrist and had never reviewed Jeffrey's psychiatry records or military records, and he was likewise unaware of some of Jeffrey's pre-accident behavior. Duffy's diagnosis was based on timing of the accident, noting that "the timing of [Jeffrey's changes] seemed in fitting with a typical pattern for someone" who had suffered a concussion. Duffy was only partially aware of Jeffrey's pre-injury behavior beyond "some difficulties holding down jobs" and having been released from the military. Duffy explained that he had heard "conflicting information" about why Jeffrey had been released from the military, and he largely relied on Jeffrey's mother for Jeffrey's history. Duffy did not recall Jeffrey's mother telling him about much of Jeffrey's pre-injury conduct issues, and she "described it more as [Jeffrey] tended to be high-strung, a lot of energy, and that some people didn't appreciate that." Duffy agreed that, on the basis of further information about some of Jeffrey's pre-injury behaviors, Jeffrey's problems did seem at least partially psychiatric. Duffy maintained that Jeffrey might have a traumatic brain injury in addition to psychiatric problems.

Dr. Norman Miller, M.D., a physician who specialized in psychiatry, neurology, and forensic psychiatry, opined that Jeffrey's psychiatric disorders predated the accident and that the accident did not exacerbate them. Miller agreed that Jeffrey had been diagnosed with a concussion, but pointed out that concussions were usually not permanent. Among other medical documents Miller reviewed, he reviewed a 2015 assessment by Duffy and a 2015 neuropsychological examination by MacInnes. Miller also reviewed Jeffrey's hospital discharge summary from 2013; the traffic crash report; "some school records;" and the EMS, emergency room, and CT scan records from the date of the accident. Miller noted that Jeffrey displayed bizarre behavior and misconduct before the accident, and Jeffrey might have been doing push-ups on the sidewalk or in

---

[1] Physiatry refers to physical medicine and rehabilitation.

the street just before the accident. Miller opined that Jeffrey was severely mentally ill before the accident, and that the accident had no effect on Jeffrey's psychiatric problems.

Dr. Bradley Axelrod, Ph.D., a clinical psychologist with a specialty in clinical neuropsychology, also believed that Jeffrey's psychological issues were unrelated to the accident. Axelrod reviewed Jeffrey's medical records and performed a cognitive assessment of Jeffrey. Axelrod testified that Jeffrey could not recall the accident, and Jeffrey's "last memory was of doing an exercise workout moments before the accident had occurred . . . He was told by others that he had run across the street and was struck by a vehicle." According to Jeffrey's records, a neuropsychologist had evaluated Jeffrey shortly after the accident and found no cognitive deficits, but had noted that Jeffrey had problems with inappropriate behavior pre-dating the accident. Axelrod's testing indicated that Jeffrey cognitively functioned in the low to average range, which Axelrod believed was "really more related to his psychiatric status than deficits that one sees following a brain injury." Axelrod noted that schizophrenia or schizoaffective disorder typically manifested in one's twenties.[2] Axelrod noted that Jeffrey scored essentially the same as he had two months after the accident, so if any treatment Jeffrey had received in the meantime "was supposed to improve something, nothing was improved, nothing worsened." Axelrod concluded that given Jeffrey's age, pre-existing problems, stable cognitive functioning, and two-year gap between the accident and the onset of his severely worsened psychological problems, the accident did not cause Jeffrey's schizophrenia or schizoaffective disorder. Axelrod observed that those were psychiatric conditions, not a brain injury, and that Jeffrey likely recovered from any actual brain injury he sustained within eight weeks of the accident. However, Axelrod agreed that Jeffrey needed ongoing mental health treatment that was likely to be longstanding.

The jury returned a verdict finding that Jeffrey had sustained an accidental bodily injury arising out of the ownership or use of a motor vehicle and that there were allowable expenses incurred by or on behalf of Jeffrey arising out of the accidental bodily injury. However, the jury awarded zero dollars for the amount of allowable expenses owed to Jeffrey, which did not account for expenses already paid by defendant. Subsequently, plaintiff filed a motion for JNOV and argued that the verdict should be set aside because one juror was not truthful about her work history with Riversbend. Plaintiff argued that the verdict was illogical and inconsistent. Plaintiff also moved that a new trial should be granted because of juror misconduct, inadequate damages seemingly influenced by prejudice, improper closing argument by defendant, and a grossly inadequate verdict; and also because the verdict was against the great weight of the evidence. The trial court denied both of plaintiff's motions. This appeal ensued.

## II. STANDARDS OF REVIEW AND GENERAL LEGAL PRINCIPLES

We review de novo a trial court's decision whether to grant judgment notwithstanding the verdict. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). This Court must "review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. (quotation marks and citation omitted). "[I]f reasonable jurors

---

[2] Jeffrey was twenty years old at the time of the accident.

could have honestly reached different conclusions, the jury verdict must stand." *Id*. at 605-606 (quotation marks, alteration, and citation omitted). "A jury's verdict is to be upheld, even if it is arguably inconsistent, if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." *Bean v Directions Unlimited, Inc*, 462 Mich 24, 31; 609 NW2d 567 (2000) (quotation marks, alteration, and citation omitted). The courts generally are powerless to overturn a jury's verdict unless "there is a total want of evidence upon some essential fact" that the jury nevertheless found. *Conley v McDonald*, 40 Mich 150, 159 (1879).

This Court reviews a trial court's denial of a motion for a new trial for an abuse of discretion. *Allard v State Farm Ins Co*, 271 Mich App 394, 406; 722 NW2d 268 (2006). As with a motion for JNOV, the jury's verdict must be given great deference and must be upheld unless it is essentially impossible to reconcile. *Id*. at 406-407. To the extent the trial court makes findings of fact regarding juror misconduct or disqualification, the trial court's factual findings are reviewed for clear error. *Bynum v ESAB Group, Inc*, 467 Mich 280, 283-285; 651 NW2d 383 (2002). Any review of the trial court's factual findings must be mindful of the trial court's superior position to evaluate the credibilities of those persons who appear before it. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986). "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes." *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016).

Under the Michigan no-fault act, a personal protection insurance provider is "liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). Accordingly, MCL 500.3105(1) imposes two threshold causation requirements for personal protection insurance benefits:

> First, an insurer is liable only if benefits are "for accidental bodily injury . . ." "For" implies a causal connection. "Accidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.

> Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "arise out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle . . ." It is not any bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle. [*Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (alterations and quotation omitted; ellipses in *Douglas*).]

Personal protection insurance benefits are payable, in part, for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). A claimant must prove four requirements before recovering benefits for allowable expenses: "(1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." *Douglas*,

-4-

492 Mich at 259. In response to a JNOV motion, a trial court "may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as requested in the motion." MCR 2.610(B)(1).

## III. INCONSISTENT JURY VERDICT

Plaintiff first argues that the judgment should have been set aside because it is illogical and inconsistent, and plaintiff should have been awarded $637,063.75 on the basis of the testimony of the service providers. There is no dispute that Jeffrey was injured within the applicability of the no-fault act, and there is no serious dispute on appeal as to how much money is owed for Jeffrey's psychiatric care and treatment. The issue was really whether Jeffrey's psychiatric conditions were caused or exacerbated by the accident, such that defendant would be required to pay for the expense of treating those conditions. The jury found that Jeffrey sustained an accidental bodily injury arising out of the ownership or use of a motor vehicle as a motor vehicle, and allowable expenses were incurred by or on behalf of Jeffrey arising out of that injury. However, the jury concluded that plaintiff was not owed any amount of money for the allowable expenses that had not already been paid by defendant.

As outlined above, there was conflicting expert testimony regarding the genesis of Jeffrey's psychiatric conditions, and the doctors clearly all had different levels of awareness of Jeffrey's pre-accident condition. No one contended that Jeffrey was completely psychologically healthy before the accident, nor did anyone contend that Jeffrey was not suffering from worsened psychological problems after the accident. However, ultimately, two doctors opined that the accident seriously exacerbated Jeffrey's problems, whereas two other doctors opined that Jeffrey's post-accident problems were unrelated to the accident. Thus, it was clearly the jury's duty, and *only* the jury's duty, to resolve that conflict. *Nichol v Billot*, 406 Mich 284, 301-302; 279 NW2d 761 (1979). "The weight given to the testimony of experts is for the jury to decide, and it is the province of the jury to decide which expert to believe." *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008) (quotation marks and citation omitted).

On the basis of that conflict, the jury could have found that (1) as the parties agreed, Jeffrey was indeed injured; but (2) Jeffrey's diagnoses of schizophrenia and schizoaffective disorder were unrelated to the accident, and (3) the unpaid expenses related only to the treatment of Jeffrey's schizophrenia and schizoaffective disorder. Such findings would not be inherently inconsistent with each other. Furthermore, such findings would not be "against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(e). Based on the record, reasonable jurors could have honestly reached different conclusions; therefore, the jury verdict must stand. *Hecht*, 499 Mich at 605-606; see also *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010) (conflicts and credibility assessments generally must be resolved by the trier of fact).

The trial court cannot have erred by allowing the jury's judgment to stand. It therefore did not abuse its discretion when it denied plaintiff's motion for a new trial under MCR 2.610 because its decision fell within the range of principled outcomes. *Rock*, 499 Mich at 260. Likewise, because the verdict was not against the great weight of the evidence or contrary to law, the trial court properly declined to grant a new trial under MCR 2.611(A)(1)(e).

# IV.  IRREGULARITY AND MISCONDUCT

Plaintiff also argues that she was entitled to a new trial under MCR 2.611(A)(1)(a) and (b) because her substantial rights were materially affected by an irregularity in the proceeding and juror misconduct.  Specifically, plaintiff contends that a juror lied during voir dire, and defense counsel made inappropriate comments during closing argument.  We disagree.

"Jurors are presumed to be qualified.  The burden of proving the existence of a disqualification is on the party alleging it." *Bynum*, 467 Mich at 283.  "Prospective jurors are subject to challenge for cause under MCR 2.511(D)." *Id*.  It is counsel's duty to "ferret out potential bases for excusing jurors." *Id*. at 284.  "[A]bsent proof of actual prejudicial effect on the verdict or proof that a challenge for cause would have been successful, it [would be] an abuse of discretion to grant a new trial." *Id*. at 286.

During voir dire, a juror disclosed that she had worked at Riversbend "in two thousand— I'm trying to believe it was—eleven."  The juror stated that she knew of Michael Wilson, the director of Riversbend, but had never interacted with him personally; nor did she know Jeffrey[3] from working at Riversbend, because she had worked as an aide in "a female-only home."  The juror stated that she would have no problems sitting as a juror, and indeed was eager about serving. Plaintiff argues that the juror had actually worked at Riversbend for three years, including in the home where Jeffrey resided; she had filed two workers' compensation cases against Riversbend, and she terminated her employment after a co-worker spilled hot water on her.  Plaintiff contends that she therefore "had an axe to grind" and clearly abused her position as jury foreperson to prejudice the jury.  As noted, most of plaintiff's outstanding balance for medical bills was owed to Riversbend.

None of the jurors were asked during voir dire about whether they had been involved in claims other than no-fault actions.  A juror can hardly be faulted for not answering a question that was never asked.  The juror was clearly uncertain about precisely when she had worked at Riversbend, and she was not asked how long she worked there.  Plaintiff provides an affidavit in support of her contentions indicating that the juror did a majority of her work at mixed-sex facilities, which is at odds with her statement at voir dire.  However, the affidavit also states that she worked at the facility where Jeffrey resided *once*, which does not establish that she actually did know Jeffrey, or that she would have any reason to remember Jeffrey if she interacted with him.  Apparently, one of her worker's compensation claims was paid, and the other was denied well before she ended her employment, casting serious doubt on whether those claims were of great significance to the juror.  Even if the juror's statements about her employment at Riversbend were not completely accurate, plaintiff engages in pure speculation that the juror knew Jeffrey or had an "axe to grind."

---

[3] Confusingly, the parties also dispute whether plaintiff admitted to knowing Jeffrey.  The juror stated that she knew a "Jacob" from high school, albeit not very well.  The only "Jacob" who was named as a possible witness to the jurors was an employee from Riversbend.

Plaintiff has not established that she was unbiased or committed misconduct; nor has plaintiff demonstrated any prejudice arising from the juror's presence on the jury or that a challenge for cause would have been successful. The trial court did not clearly err when it found that the juror did not commit misconduct.

Plaintiff also argues that defense counsel made improper and unfairly prejudicial statements during closing argument. Defense counsel essentially just told the jury the same thing plaintiff had stated during plaintiff's opening arguments: that defendant had paid for Jeffrey's benefits through August of 2016, and that defendant now contended that Jeffrey's treatment after that date was due to Jeffrey's pre-existing conditions rather than the accident. We do not understand how defense counsel can be faulted for substantively agreeing with plaintiff's counsel. If plaintiff believes the jury should not have learned that defendant paid for Jeffrey's benefits until August 2016, plaintiff can only blame herself, which is not grounds for relief. *Smith v Musgrove*, 372 Mich 329, 337; 125 NW2d 869 (1964). Therefore, the court did not abuse its discretion when it denied plaintiff's motion for a new trial under MCR 2.611(A)(1)(a) and (b).

## V. INADEQUATE VERDICT

Finally, plaintiff argues that the court abused its discretion by failing to grant a new trial under MCR 2.611(A)(1)(c) and (d) because the damages awarded were inadequate and fueled by juror misconduct, and because the verdict was grossly inadequate. We disagree.

In general, the adequacy of the amount of a verdict is a matter for the jury, and we will not substitute our judgment for the jury's verdict "unless a verdict has been secured by improper methods, prejudice, or sympathy." *Kelly v Builders Square, Inc*, 465 Mich 29, 35; 632 NW2d 912 (2001) (quotation marks and citations omitted). "[T]he trial court's inquiry is limited to objective considerations related to the actual conduct of the trial court or the evidence presented." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003).

As discussed, plaintiff has not established that the complained-of juror was prejudiced or that she prejudiced the jury. Additionally, "[t]he weight given to the testimony of experts is for the jury to decide, and it is the province of the jury to decide which expert to believe." *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008) (quotation marks and citation omitted). As noted, the doctors disagreed whether Jeffrey's diagnoses of schizophrenia and schizoaffective disorder were related to the accident, or whether they were mere continuations of pre-existing problems and unaffected by the accident. It was for the jury to decide which witnesses to believe in determining whether plaintiff was entitled to an award. Plaintiff has failed to establish that the verdict was "secured by improper methods, prejudice, or sympathy." *Kelly*, 465 Mich at 35. Therefore, the trial court did not abuse its discretion when it denied plaintiff's motion for a new trial.

Affirmed.

/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien