*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J MCDONALD, Minor.

UNPUBLISHED
August 12, 2025
3:31 PM

No. 373553
Kalamazoo Circuit Court
Family Division
LC No. 2023-000291-NA

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

After a bifurcated adjudication trial and dispositional hearing, the trial court entered an order terminating respondent-mother's parental rights to her daughter, JM, under MCL 712A.19b(3)(g) (failure to provide proper care or custody when financially able to do so), (i) (previous termination of parental rights of the child's sibling(s) due to serious and chronic neglect), and (j) (reasonable likelihood of harm if the child is returned, due to parent's conduct or capacity). In this appeal of right, respondent argues that the trial court erred (1) by admitting legally inadmissible evidence to find jurisdiction and statutory grounds for termination; (2) by finding that petitioner, the Department of Health and Human Services, made reasonable efforts to reunify the family; and (3) by finding statutory grounds to terminate her parental rights under MCL 712A.19b(3)(i). Respondent does not contest the termination of her parental rights under MCL 712A.19b(3)(g) or MCL 712A.19b(3)(j), nor does she challenge the trial court's finding that termination was in JM's best interests. Finding no error requiring reversal, we affirm the trial court's termination order.

## I. RELEVANT FACTS

In May 2022, the Ottawa Circuit Court removed respondent's five older children due to homelessness, eventually terminating her parental rights to four of them, while the fifth child was placed with that child's biological father. During ongoing child protective proceedings in Ottawa County, JM was born in Kalamazoo County, prompting a petition for JM's removal and termination of respondent's parental rights because of respondent's unstable housing, unresolved mental health concerns, refusing services to address those concerns (in the Ottawa County case), and the prior removal of her older children. The trial court authorized the petition, placed JM

-1-

under care and supervision, and ordered efforts for reunification. At the adjudication trial and termination hearing, respondent admitted to ongoing homelessness since 2019. Respondent's older children had medical and mental-health issues, which she claimed developed after their removal, and she initially refused consent for treatments because of disbelief in their necessity. Despite attending counseling until August 2023, respondent stopped because of work and school commitments, and she disputed a psychological evaluation from the Ottawa County case.

At the bifurcated adjudication trial and termination hearing, the trial court found by a preponderance of evidence that homelessness and conditions leading to prior terminations persisted, establishing jurisdiction under MCL 712A.2(b)(1) and (2).[1] The court then turned to the issue of termination, finding that respondent failed to provide housing or employment verification. The court found that termination of her parental rights was warranted under MCL 712A.19b(3)(g), (i), and (j). Finally, the court found that termination was in JM's best interests, considering the need for stability and a consistent environment. Respondent now appeals.

## II. STANDARDS OF REVIEW

Generally, we review de novo preserved issues involving the interpretation and application of relevant statutes and court rules, *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019), as well as whether the procedures in the circuit court's family division comply with the court rules, *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

We review for clear error preserved issues involving a trial court's decision regarding reasonable reunification efforts. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). We also review for clear error "the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Baham*, 331 Mich App 737, 751; 954 NW2d 529 (2020) (quotation marks and citation omitted). "Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of the respondent's parental rights." *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021).

In child protective proceedings, we review claims of error that were not properly preserved for appellate review for plain error affecting the parent's substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2; *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or

---

[1] The hearing took place during over the course of four morning sessions in August, September, and October 2024. For the first two and a half sessions, the court heard evidence admissible under the Michigan Court Rules. After testimony was completed on day three, the parties rested and the court closed the proofs. The court then heard argument from the parties. During the fourth and final session of the hearing, the court placed its decision on the record.

obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App at 258 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceeding." *In re Utrera*, 281 Mich App at 9. Reversal is warranted when plain error has occurred that seriously affected "the fairness, integrity, or public reputation of the judicial proceedings . . . ." *Id.* , citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), and *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999).

## III.  ADJUDICATION

Respondent first argues that the trial court based its adjudicative decision on legally inadmissible evidence. We disagree. Respondent failed to preserve this issue by objecting below to the procedure used by the trial court. See *In re Mota*, 334 Mich App at 311. Therefore, our review is for plain error affecting respondent's substantial rights. *In re MJC*, ___ Mich App at ___; slip op at 2.

In Michigan, the procedure for terminating parental rights is governed by the juvenile section of the Probate Code of 1939, see MCL 712A.1 *et seq*., and the corresponding court rules, see MCR 3.901(B). See *In re Sanders*, 495 Mich 394, 404-407; 852 NW2d 524 (2014). Following an investigation, petitioner may petition a trial court to take jurisdiction over a child under MCL 712A.2(b) and MCR 3.961(A). *In re Mota*, 334 Mich App at 312. "If the court authorizes the petition, the adjudicative phase follows." *In re Ferranti*, 504 Mich at 15. "The question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *Id*. Once jurisdiction is established, the dispositional phase begins. *Id*. at 16. During this phase, the trial court enters orders that are " 'appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained.' " *In re Sanders*, 495 Mich at 406, quoting MCL 712A.18(1). The court is required to hold regular hearings to review compliance with its dispositional orders and the case service plan, to evaluate "the continued need and appropriateness for the child to be in foster care" (if applicable). MCR 3.975(A).

However, petitioner may request the termination of parental rights at the initial dispositional hearing, in which case, MCR 3.977(E) governs, the pertinent part of which says the following:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> (1) the original, or amended, petition contains a request for termination;
>
> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea

proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

(a) are true, and

(b) establish grounds for termination . . . .

When "an adjudication trial is conducted and the [Department of Health and Human Services] requests termination at the initial dispositional hearing," the following process applies:

> First, an adjudication trial is to be conducted with the court allowing the introduction of legally admissible evidence that is relevant to the exercise of jurisdiction under MCL 712A.2(b). At the conclusion of the adjudication trial, the court, in a bench trial, is to determine whether the [Department of Health and Human Services] established by a preponderance of the evidence a basis for jurisdiction under MCL 712A.2(b). If jurisdiction is not established, the proceeding is, of course, concluded. If the trial court finds that it has jurisdiction, the dispositional hearing in which termination is sought may immediately be commenced. At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.977(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.977(H)(2). [*In re Mota*, 334 Mich App at 316.]

Because the trial court in *In re Mota* failed to clearly demarcate the adjudication trial from the dispositional hearing, and issued its jurisdictional and dispositional rulings after all the proofs were submitted, this Court held that the trial court committed plain error. *Id*. at 317. Notwithstanding this plain error, the respondent's arguments did not establish that the trial court's error affected the respondent's substantial rights. *Id*. The same reasoning applies in the present case.

The trial court in the present case stated at the outset of the combined adjudication trial/dispositional hearing that it would be a bifurcated proceeding. Only if the trial court found jurisdiction would the proceeding transition from adjudicative to dispositional. The trial court was careful to only admit evidence that it deemed to be admissible under the Michigan Rules of Evidence during the adjudication portion of the hearing. In fact, multiple exhibits that were offered by the prosecution without objection were nonetheless not admitted by the trial court because it believed that the exhibits included inadmissible hearsay. Like the trial court in *In re Mota*, the court in the present case issued rulings in regard to jurisdiction and termination, in a single hearing, after all the proofs were submitted. However, unlike *In re Mota*, an attempt was made to separate the adjudication trial from the dispositional hearing. That said, we need not rule on whether the trial court "failed to proceed as required by the court rules," because respondent has not shown that this error affected her substantial rights or seriously affected the integrity, fairness, or public reputation of the proceedings. *In re Mota*, 334 Mich App at 317.

The trial court exercised jurisdiction primarily on the basis of respondent's continued lack of housing. Supporting this finding was respondent's testimony that she was homeless when her older children were removed in Ottawa County, and she was homeless when JM was born. Her testimony indicated that she still lacked suitable housing for her and JM during the bifurcated adjudication trial and dispositional hearing. There is no dispute that respondent's testimony about her circumstances was legally admissible. Even if the trial court committed procedural error pursuant to *In re Mota*, such error did not affect respondent's substantial rights, as her testimony provided legally admissible evidence that established the grounds for the trial court's exercise of jurisdiction under MCL 712A.2(b)(1) (a preponderance of the evidence that respondent, while able, nonetheless neglected or refused to provide proper or necessary support or other care necessary for the juvenile's health) and (b)(2) (a preponderance of the evidence that the juvenile's home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent is an unfit place for the juvenile to live).

Respondent asserts that the combined nature of the proceeding denied her a proper dispositional hearing. This argument is without merit. Even if there was not a sufficiently express demarcation between the adjudicative and dispositional phases of the hearing, that respondent had a dispositional hearing is beyond doubt. The hearing lasted multiple days and addressed both the adjudicative and dispositional phases, respondent fully participated without objection, best-interest testimony was taken, and respondent's counsel presented a closing argument that addressed the dispositional phase. On this record, respondent's assertion that she was denied a proper dispositional hearing is unavailing.

Respondent implies that the trial court's jurisdictional decision was not valid because it rested on past situations, not on circumstances present at the time of the hearing. This argument is without merit. As already discussed, the evidence presented supported the trial court's finding that respondent lacked appropriate housing from the time that JM was born through the close of proofs approximately 11 months later.

Respondent contends that petitioner did not present evidence that she lacked housing, only evidence that she had not verified her housing, and she further argues that requiring her to present evidence of housing improperly shifted the burden of proof to her. This argument is not relevant to whether the trial court relied on legally inadmissible evidence to exercise jurisdiction. Whether respondent verified her housing with her case manager became relevant only in the dispositional phase of the proceeding, and whether the trial court's dispositional ruling was clear error will be addressed later.

For the foregoing reasons, we find that the trial court did not err when it found that it could exercise jurisdiction under MCL 712A.2(b).

## IV. REASONABLE EFFORTS

Respondent next contends that the trial court clearly erred by finding that petitioner made reasonable efforts at reunification because none of the testimony at the hearing showed that respondent received the therapy recommended by the expert who performed her psychological evaluation in this matter. Again, we disagree. Respondent did not preserve this claim of error by challenging the adequacy of psychological services in the trial court. See *In re Atchley*, 341 Mich

App at 336-338. Therefore, our review is for plain error affecting respondent's substantial rights. See *In re MJC*, ___ Mich App at ___; slip op at 2.

Before addressing this issue, we note that, the trial court in this matter was not required to order reasonable efforts towards reunification after the adjudication trial because MCR 3.977(E) applies to this case. The original petition contained a request for termination. As a result, MCR 3.977(E) instructed the trial court to order termination of the parental rights of respondent and order that additional efforts for reunification of the child shall not be made, if subrules 2 through 4 applied. At the trial, the court found by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) was established, consistent with subrule (2). At the initial disposition hearing, the court found on the basis of clear and convincing legally admissible evidence that had been introduced at trial that one or more facts in the petition were true and established grounds for termination, consistent with subrule (3). Finally, the court found that termination of parental rights was in the child's best interests, consistent with subrule (4). As a result, the court was required, under MCR 3.977(E) to order that additional efforts for reunification of the child with respondent shall not be made.

Generally, the trial court must order reasonable efforts to reunify the child and family unless certain exceptional circumstances apply. See MCL 712A.19a(2); *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022). Although respondent was not under a legal obligation or court order to comply with services prior to the adjudication trial, services were offered to her,[2] including potential support for housing and supervised parenting time at multiple locations.[3] After a recommendation was made for respondent to continue participating in individual therapy, respondent said she started attending sessions in December 2023, and continued attending through at least the second week of March 2024. However, in a May 2024 pretrial hearing, she said she stopped participating in any services due to her work schedule. At a meeting on September 25, 2024, the case manager attempted to speak to respondent about the benefits of counseling, but respondent communicated that she did not believe there was anything wrong with her, that the psychological diagnoses were inaccurate, and that she did not require counseling. The case manager testified that respondent signed releases that would allow her counselor to report her attendance at counseling, but not the content of their sessions. Respondent testified that her attorney had copies of her attendance records for counseling and that her counselor "didn't give a report on what we talked about." Thus, the record indicates that, prior to the adjudication trial, reasonable efforts towards reunification were made, but respondent refused many of the services that were offered. Although respondent correctly asserts that the record does not show that she received or was referred counseling that was specific to address the precise diagnosis made by the expert who conducted her psychological evaluation, because she would not allow the department access to the content of the counseling she received, ceased attending sessions, and refused to even

---

[2] An initial service plan was adopted on December 15, 2023 and was subsequently updated multiple times prior to the adjudication trial.

[3] Testimony offered by the prosecution at the adjudication trial indicated that respondent had attended 45 out of 69 parenting time visits with JM, and that from the start of the termination hearing to the date of the third session of the hearing, October 22, 2024, respondent had attended 11 out of 14 sessions.

entertain the idea of resuming counseling, the record supports the fact that any lack of psychological services provided to respondent was caused by respondent. In that regard, we note that any error raised on appeal must be that of the trial court; it cannot be an error "to which the aggrieved appellant has contributed by planned or neglectful omission of action on [her] part." *Smith v Musgrove*, 372 Mich 329, 337; 125 NW2d 869 (1964).

Respondent argues that replacing her foster-care worker would have constituted a reasonable effort, given her psychological needs, the lack of evidence of counseling that addressed those needs, and the case manager's role in the termination of her parental rights to her older children. This Court generally does not consider any issues not stated in the statement of questions presented. See *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). Respondent's statement of the questions presented does not challenge the trial court's reasonable-efforts finding on grounds that the agency did not replace the case manager as respondent's caseworker. Nor has respondent cited any authority indicating that a petitioner fails to make reasonable efforts at reunification solely because it does not give a respondent a new caseworker. If an error is subject to reasonable dispute because of the absence of supporting authority, it cannot be deemed plain or obvious. See *In re Barber/Espinoza*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369359); slip op at 8.

For the foregoing reasons, we find that the trial court did not plainly err by finding that petitioner made efforts at reunification that were reasonable under the circumstances. See *In re Sanborn*, 337 Mich App at 258.

## V. STATUTORY GROUNDS

Lastly, respondent argues that the trial court erred by finding statutory grounds to terminate her parental rights to JM under MCL 712A.19b(3)(i) (parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights). But respondent does not challenge the trial court's termination of her parental rights under MCL 712A.19b(3)(g) or (j), nor does she challenge that termination was in JM's best interests.[4]

This Court will only reverse the termination of parental rights where the trial court clearly erred in its finding that clear and convincing, legally admissible evidence established a statutory ground for termination. See *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011); MCR 3.977(E)(3). The trial court did not clearly err by finding that clear and convincing, legally admissible evidence established grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j). A trial court may terminate a parent's parental rights to a child under this statute if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."

---

[4] Given her failure to challenge the best-interest determination, we may presume that the trial court did not clearly err in that regard. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341. Nevertheless, having reviewed the record, the evidence clearly preponderated toward a finding that the termination of respondent's parental rights was in JM's best interests.

MCL 712A.19b(3)(j). Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973). The trial court in the present case repeatedly referred to respondent's lack of capacity to make choices that were in the best interests of her children, including JM. The evidence supports that assessment.

Throughout this case and the prior case, respondent demonstrated that she would not secure stable housing for her children and that her conduct related to housing put the children at risk of harm. The prior case involved an investigation regarding allegations of homelessness and improper supervision of her children in February 2021. The children were placed in protective custody following what occurred in May 2022 when respondent and her four children were homeless. On that occasion, respondent refused to complete an intake at a shelter and, instead, decided that she and her children would sleep in a municipal park, at a time when the temperature was 45 degrees and a light drizzle was falling. She subsequently refused the offer of a hotel room and the children were removed from her care. In the present case, respondent failed to secure housing for herself and JM, prior to JM's birth, and told a case worker that she intended to take the newborn to a shelter following discharge from the hospital. By the time of the adjudication trial began, nine months later, she still had not secured stable housing. After the second day of trial, in September 2024, the court once again communicated the urgency of securing housing. Yet, following that hearing, although respondent alleged to have secured an apartment, she refused to allow the case worker to see the apartment or interview the person with whom she would be living, and did not provide any documentation regarding this alleged housing until the morning of the last day of trial, which provided no time for the case worker to even attempt to verify that the housing existed or was suitable for her child. Under *In re LaFlure*, 48 Mich App at 392, it was reasonable for the court to conclude that respondent's failure to provide stable housing for her four other children would likewise occur with JM. That assertion is bolstered by the facts in the present case, where respondent failed to secure stable housing from the first day of the case to the date of the termination of parental rights. Thus, there is a reasonable likelihood, based on the conduct or capacity of respondent, as it pertains to her unwillingness or inability to secure stable housing, that JM will be harmed if the child is returned to her.

Additionally, respondent's testimony established her "lack of judgment, insight, and empathy" toward her children, including JM. See *In re Utrera*, 281 Mich App at 24-26. Respondent displayed a lack of insight when she attributed her older children's medical, mental health, and educational needs solely to their being taken into foster care and when she blamed others for the removal of her children. She also displayed a lack of insight into the children's mental-health issues when she refused consent for her eldest daughter to receive mental-health services and for trauma assessments for the children. She additionally displayed a lack of insight into her own mental health. This was evident in her suspicions about the psychologist, her assertion that she never had any diagnoses before she went to see that psychologist, and her abandoning counseling whenever she became too busy with work or school. She demonstrated emotional volatility when she threatened to call the police on the lawyer-guardian ad litem and through her behavior at the hospital after she gave birth to JM.

Respondent's lack of insight and judgment prevented her from making choices that prevented her children's homelessness and that met their medical and mental-health needs.

Respondent's conduct in the present case did not show the trial court that she had developed the capacity to make choices that would keep JM safe and healthy if returned to respondent's care.

Therefore, the trial court did not err by finding that clear and convincing, legally admissible evidence established grounds for the termination of respondent's parental rights under MCL 712A.19b(3)(j).[5]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[5] Given this conclusion, we need not address the trial court's findings under MCL 712A.19b(3)(i) or MCL 712A.19b(3)(g). See *In re Sanborn*, 337 Mich App at 273.