*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY HAHN,

       Plaintiff-Appellant,

v

GARY VANDUKER, ROBERT ELY PETERSON,
BIG FIVE ENTERTAINMENT, INC., and STATE
FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,

       Defendants-Appellees.

UNPUBLISHED
April 15, 2021

No. 349427
Oakland Circuit Court
LC No. 2017-162032-NI

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Plaintiff was injured in an automobile accident when her vehicle was struck by a vehicle owned by defendant Robert Peterson and driven by defendant Gary Vanduker, who allegedly was intoxicated. Plaintiff brought this action against Peterson and Vanduker, and also sought recovery of damages under the dramshop act, MCL 436.1801 *et seq.*, from defendant Big Five Entertainment, Inc. ("Big Five"), and recovery of no-fault personal protection insurance ("PIP") benefits from defendant State Farm Mutual Automobile Insurance Company ("State Farm"). The trial court granted Big Five's motion for summary disposition pursuant to MCR 2.116(C)(10). Following a jury trial with respect to plaintiff's claims against State Farm, the trial court entered a judgment, consistent with the jury's verdict, requiring plaintiff to accept payments that State Farm had previously tendered and awarding plaintiff additional PIP benefits of $600, but holding that plaintiff was not entitled to any other PIP benefits. The trial court also awarded State Farm case evaluation sanctions against plaintiff, and awarded Big Five sanctions against plaintiff for filing a frivolous claim. Plaintiff now appeals as of right, challenging the dismissal of her dramshop claim against Big Five, the judgment entered with respect to her claims against State Farm, and the trial court's attorney fee awards in favor these two defendants. We affirm.

## I. FACTS AND PROCEEDINGS

Plaintiff alleges that she sustained long-term injuries from an automobile accident on October 21, 2016, in Madison Heights. Defendant Gary Vanduker was driving a Dodge Caravan owned by defendant Robert Peterson on southbound John R Road. After Vanduker struck the rear of plaintiff's vehicle, Vanduker did not stop, but continued to drive southbound on John R. A police officer observed Vanduker driving erratically with fresh damage to the front of his vehicle. After the officer stopped Vanduker, his blood-alcohol level was measured at 0.22 grams of alcohol per 100 milliliters of blood, which was more than twice the legal limit. See MCL 257.625a(7)(b).

Plaintiff refused ambulance transportation to a hospital, but after returning to her home to drop off groceries, she went to the emergency room at St. John Hospital. She was not diagnosed with a concussion or other head injury at the emergency department. Following the accident, plaintiff sought treatment from Dr. Jawal Agha, Dr. Jay Inwald, and physicians at Mendelson Kornblum Orthopedics. Plaintiff alleged that she experienced ongoing problems with her head, neck, and back. She also alleged that she sustained a brain injury that caused memory deficits, cognitive deficits, mood swings, and impulsivity. Plaintiff was insured under a no-fault automobile insurance policy issued by State Farm at the time of the accident.

Plaintiff brought this lawsuit against State Farm and Big Five. Plaintiff asserted a dramshop claim against Big Five, which owned and operated Augie's Bar and Grill in Madison Heights. Plaintiff named Vanduker as the allegedly intoxicated person. She alleged that Augie's Bar unlawfully served alcoholic beverages to Vanduker after he became visibly intoxicated. Big Five moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no evidence that Vanduker was present and served alcohol at Augie's Bar before the accident. Indeed, it submitted an affidavit from Vanduker, who denied that he was at Augie's Bar on the day of the accident. In her complaint, plaintiff alleged that Augie's Bar was the only licensed facility that served liquor along the route that Vanduker was driving, but plaintiff failed to file a response to State Five's motion for summary disposition. After the response cutoff date, plaintiff filed a motion to adjourn the summary disposition motion until she deposed Vanduker. The trial court denied plaintiff's motion to adjourn and granted Big Five's motion for summary disposition. The trial court also granted Big Five's motion for costs and attorney fees under MCR 2.114 and MCL 600.2591.

In her claim for recovery of no-fault benefits, plaintiff alleged that State Farm wrongfully denied or unreasonably delayed payment of PIP benefits. State Farm contested the extent and duration of plaintiff's injuries and the causal connection between the automobile collision and the injuries she claimed. State Farm determined that plaintiff's neck injury had resolved as of December 20, 2017, and her head injury had resolved as of February 19, 2019. Also on February 19, 2019, State Farm tendered payment to plaintiff for services provided by Neurological Consultants and Dr. Inwald in the amount of $1,200, and by Mendelson Kornblum in the amount of $5,491.04. These providers rejected these payments.

Plaintiff's PIP claims against State Farm proceeded to trial. Before trial, the trial court granted State Farm's motion in limine to preclude plaintiff from presenting evidence of expenses incurred but not disclosed to State Farm by the discovery cutoff date of November 13, 2019. The jury found that plaintiff sustained allowable expenses arising from the automobile accident. The verdict directed plaintiff to accept the tendered payments to Neurological Consultants and Mendelson Kornblum. The jury also awarded plaintiff an additional $600 to add to Dr. Inwald's

payment, but did not find any other damages. The trial court entered a judgment consistent with the jury's verdict on May 29, 2019. On July 10, 2019, the trial court denied plaintiff's motion for judgment notwithstanding the verdict (JNOV). On October 4, 2019, the trial court issued an opinion and order awarding State Farm case evaluation sanctions of $99,523.35.

## II. STATE FARM

Plaintiff raises several issues challenging the judgment on her claims against State Farm and the trial court's postjudgment order awarding State Farm costs and attorney fees as case evaluation sanctions.

## A. DISCOVERY ISSUES

Plaintiff raises three issues challenging the trial court's rulings regarding discovery matters. A trial court's decision regarding the imposition of discovery sanctions is reviewed for an abuse of discretion. *Jilek v Stockson* (*On Remand*), 297 Mich App 663, 665; 825 NW2d 358 (2012). An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## 1. LIMITATION OF PLAINTIFF'S CLAIMS

Plaintiff first argues that the trial court erred by granting State Farm's motion in limine to preclude her from introducing any evidence of medical expenses not disclosed during discovery. We disagree.

The trial court's amended scheduling order provided that discovery shall be completed by November 13, 2018. State Farm served on plaintiff a request for production of documents that requested plaintiff to produce "[a]ll records relating to any claim made on behalf of Kathy Hahn for Michigan no-fault benefits as a result of the motor vehicle accident described in [her] Complaint." State Farm's motion in limine, dated February 4, 2019, alleged that plaintiff had produced invoices from five providers, with specified ending dates. The motion further alleged that plaintiff's latest demand had referenced other treatment providers, but "failed to indicate what charges were listed, or otherwise attach any proof of the fact and amount of the loss." State Farm argued that because plaintiff had failed to supplement her discovery responses and failed to provide "any supporting evidence or reasonable proof of any additional claims for [PIP] benefits," it was prejudiced in its ability to evaluate any additional claims. Accordingly, it requested that plaintiff "be precluded from putting on any other proofs other than the medical bills produced, and claims for replacement services . . . ." Plaintiff did not file a response to State Farm's motion. The trial court subsequently granted State Farm's motion and limited plaintiff's claims for outstanding medical bills to the providers and end dates identified in the motion.

Not only did plaintiff fail to respond to State Farm's motion in limine in the trial court, but her argument on appeal fails to address the discovery issue that was the basis for State Farm's motion and the trial court's decision. Instead, plaintiff merely asserts that State Farm improperly tried to improve its position at trial by issuing partial payments that plaintiff's providers rejected. This argument has no relevancy to State Farm's motion in limine or the trial court's resulting order. Plaintiff's failure to address the basis for State Farm's motion and the trial court's decision is alone fatal to her argument on appeal. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381;

689 NW2d 145 (2004) ("When an appellant fails to dispute the basis of the trial court's ruling, this Court need not even consider granting plaintiffs the relief they seek.") (cleaned up). Regardless, plaintiff has not demonstrated that the trial court erred. The trial court's order is consistent with the court rules governing a party's duty to seasonably supplement prior discovery responses, MCR 2.302(E)(1)(b)(*ii*),[1] and the trial court's authority to sanction that party by "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence," MCR 2.313(B)(2)(b).

To the extent that plaintiff advances arguments on appeal for imposing a different or lesser sanction, because plaintiff never responded to State Farm's motion, and thus failed to present these arguments to the trial court, we are unable to conclude that the trial court's decision, which was authorized by the court rules, constituted an abuse of discretion.

## 2. DR. METLER'S TESTIMONY

Plaintiff argues that the trial court erred by denying her motion to exclude or restrict the testimony of Dr. Lisa Metler, a neuropsychologist who conducted an independent medical examination of plaintiff and testified as a witness for State Farm, because she did not provide the raw data from her testing until the day of Dr. Jay Inwald's deposition. Plaintiff also argues that the trial court erred by denying her request for an adverse-inference instruction with respect to Dr. Metler's raw data. We review this claim of instructional error for an abuse of discretion. See *Brenner v Kolk*, 226 Mich App 149, 160-161; 573 NW2d 65 (1997).

In support of her argument that Dr. Metler's testimony should have been excluded or restricted, plaintiff relies on authority discussing a party's destruction or loss of material evidence. In this case, however, plaintiff's motion did not allege that State Farm destroyed, lost, or failed to preserve Dr. Metler's raw data. Her motion arose from a delay in producing the raw data. The record discloses that the delay resulted from plaintiff's failure to serve a subpoena for the information on the third-party agency that provided Dr. Metler to State Farm. With State Farm's assistance, plaintiff was provided with Dr. Metler's raw data on the morning of Dr. Inwald's

---

[1] The court rules governing discovery were substantially amended on June 19, 2019, effective January 1, 2020. Those amendments are not applicable to this case. Accordingly, we rely on the discovery rules in effect at the time of State Farm's motion and the trial court's decision. We note, however, that the amended rules specifically provide that a plaintiff in a first-party action for no-fault benefits must disclose "all provider bills or outstanding balances for which the plaintiff seeks reimbursement." MCR 2.302(A)(2)(b)(*ii*). "A party that has made a disclosure under MCR 2.302(A)—or that has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response" if the party's "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." MCR 2.302(E)(1)(a)(*i*). "If a party fails to provide information . . . as required by MCR 2.302(A) or (E), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." MCR 2.313(C)(1). These amendments, although inapplicable, support our conclusion that the trial court's decision to preclude plaintiff from introducing any evidence of undisclosed medical expenses was not an abuse of discretion.

-4-

deposition. Thus, this issue does not involve evidence that was lost or destroyed. Moreover, plaintiff fails to cite any instance in which Dr. Metler gave testimony that was unfairly prejudicial to plaintiff due to the delayed production, and plaintiff acknowledged that Dr. Inwald stated that the data would not change his opinion about what he had decided. Under these circumstances, the trial court did not abuse its discretion by denying plaintiff's motion to exclude or restrict Dr. Metler's testimony. Further, because the data was provided to plaintiff, she was not entitled to an adverse-inference instruction. Accordingly, plaintiff is not entitled to relief with respect to this issue.

### 3. SUPPLEMENTAL CLAIM FILE

Plaintiff next argues that the trial court improperly "allowed" State Farm to "withhold over 4,700 pages of its claim file until the morning of trial." Plaintiff argues that this evidence should have been excluded because it was not timely produced. Again, we review the trial court's decision whether to impose a discovery sanction for an abuse of discretion. *Jilek*, 297 Mich App at 665.

Plaintiff's counsel stated on the first day of trial that he requested the updated claim file several weeks before trial, but State Farm did not provide the updated file until the afternoon before the first day of trial. Because the information had been produced and plaintiff never raised this issue in an appropriate motion before trial, the trial court declined to impose any discovery sanction.

At the time relevant to this case, MCR 2.313(B)(2) provided that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may order such sanctions as are just . . . ." In this case, the trial court denied plaintiff's request for a blanket exclusion of all evidence from the belatedly disclosed portion of the claim file. It also denied plaintiff's request for additional time to review the newly disclosed documents. As the trial court observed, plaintiff was aware well before trial that she did not have an updated copy of the claim file, but she never filed an appropriate motion before trial, and the updated file was ultimately provided to plaintiff.[2] Notably, plaintiff did not object to any evidence at trial on the ground that it was belatedly disclosed or claim unfair surprise. Similarly, on appeal, plaintiff fails to mention any instance in which she was prejudiced at trial by the delayed disclosure. She does not identify any information in the updated claim file that affected her presentation of her case-in-chief or her response to any defense theory. Under these circumstances, the trial court did not abuse its discretion by failing to impose a sanction for the delayed disclosure of the updated claim file.

### B. ASSIGNMENT OF CLAIM TO MEDICAL PROVIDER

---

[2] We have not found any support in the record for plaintiff's assertion that the belatedly disclosed claim file involved more than 4,700 pages of material. At trial, plaintiff asserted that the claim file consisted of "eighteen hundred page[s]."

Plaintiff next argues that the trial court erred by granting State Farm's motion to preclude her from presenting evidence of expenses that she incurred from treatment provided by Synergy. We disagree.

It is undisputed that plaintiff assigned to Synergy the portion of her claims for services provided by Synergy. Relying on that assignment, Synergy brought a separate action against State Farm for recovery of benefits for its services to plaintiff.[3] When an assignment occurs, the provider, as assignee, "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). Conversely, the assignor surrenders the right to pursue a claim in litigation. See *id*. Plaintiff therefore relinquished her right to recover expenses related to Synergy's provision of treatment. Accordingly, the trial court did not err by precluding plaintiff from presenting evidence of these expenses.

## C. REMARKS DURING OPENING STATEMENT

Plaintiff argues that the following remarks by State Farm's attorney during opening statement denied her a fair trial:

> [I]t's important to note that this case is not just important to Ms. Hahn. It's actually important to State Farm, too, and the reason being that every single case that is decided in a court of law sets a precedent for future cases. Yes, I mean, it – it would be much easier if State Farm would just pay benefits beyond the denial date, because those bills are outstanding.
>
> However, it – it's important to consider what is actually fair and just. Put yourselves in the shoes of the policyholders, or even the claim specialists such as – as Julie at State Farm, and ask yourself what you would do in these circumstances as you're investigating a claim such as this. I suggest that you would have come to the same conclusions.
>
> So I'm asking you, if you would, to please listen closely to both sides of the argument. And I thank you for your time.

---

[3] At the time Synergy received the assignment from plaintiff and brought its own lawsuit against State Farm, a healthcare provider did not possess a direct cause of action under the no-fault act against a no-fault insurer for recovery of PIP benefits. See *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 218; 895 NW2d 490 (2017). However, an injured person retained the ability to assign his or her right to past or presently due benefits directly to the provider. *Id*. at 217 n 40. After *Covenant* was decided, MCL 500.3112 was amended by 2019 PA 21, effective June 11, 2019, to provide that "[a] health care provider listed in section 3157 may make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." The amendment does not apply to this case because judgment was entered before the effective date of the amendment.

Plaintiff argues that these remarks involved a blatant and improper appeal to the jury's sympathy. Because plaintiff failed to move for a mistrial or otherwise object to the challenged remarks, this issue is unpreserved. *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 732; 761 NW2d 454 (2008).

"Appellate review of claims of misconduct by counsel is de novo to determine whether a party was denied a fair trial." *Moody v Home Owners Ins Co*, 304 Mich App 415, 445; 849 NW2d 31 (2014), rev'd in part on other grounds sub nom in *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211; 884 NW2d 238 (2016). Review of unpreserved issues "is limited to plain error." *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (quotation marks omitted), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443; 906 NW2d 482 (2017) (alteration in original, citation and quotation marks omitted).

In *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 290; 602 NW2d 854 (1999), this Court, quoting *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982), observed:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.

It is improper for counsel to appeal to the sympathy of the jury. *Smith v Musgrove*, 372 Mich 329, 336; 125 NW2d 869 (1964), citing 53 Am Jur, Trial, § 496, p 401. In *Reetz*, 416 Mich at 104-105, our Supreme Court held that the plaintiff's counsel made an improper appeal to the jury's sympathy by stating that the plaintiff, a seaman, was not entitled to workers' compensation benefits for an occupational injury. The Court held that the defendant was not entitled to relief on this basis because any prejudice "could have been cured by an instruction from the bench to the effect that sympathy or prejudice must not influence the jury's decision." *Id*. at 105. However, the Court further held that the defendant, Kinsman, was entitled to a new trial because the plaintiff's attorney "inflamed the passions of the jury against Kinsman by constantly stressing the corporate nature, wealth, power, and insensitivity of Kinsman." *Id*. at 110. The Court found that "[t]he effect of these comments was to create in the minds of the jurors an image of Kinsman as an unfeeling, powerful corporation controlled by a ruthless millionaire. Even a juror who harbored

no prejudice against corporations or millionaires might have been swayed by these inflammatory remarks to alter his view of the evidence." *Id*. at 111. The Court concluded:

> Our prior cases should have made clear that even isolated comments like these are always improper, even if not always incurable or error requiring reversal. However, when, as in this case, the theme is constantly repeated so that the error becomes indelibly impressed on the juror's consciousness, the error becomes incurable and requires reversal. [*Id*.]

In the instant case, counsel's request that the jurors place themselves in the shoes of the adjusters was not an improper appeal to sympathy. In context, counsel was asking the jury to evaluate plaintiff's claims from the adjuster's perspective. Counsel was reinforcing that a no-fault insurer cannot simply approve every payment submitted by an injured insured without verifying the insured's entitlement to the benefit. The reference to policyholders, in context, advised jurors not to think of insurance benefits as free money from an impersonal company with no cost to persons. To the extent that the remark could be considered improper, it involved an isolated comment and any perceived prejudice could have been cured by a timely objection. Because the statement was not inherently inflammatory and it did not involve a prejudicial theme that was repeated throughout trial, it did not have the potential to deprive plaintiff of a fair trial. Accordingly, plaintiff is not entitled to relief with respect to this unpreserved issue. *Badalamenti*, 237 Mich App at 290.

## D. STATEMENTS BY STATE FARM THAT CERTAIN BILLS WERE PAID

Plaintiff also argues that State Farm was improperly allowed to argue that it had paid two of the bills at issue, one for Dr. Inwald at Neurological Consultants, and one for Mendelson Kornblum. Because plaintiff failed to object to the purported instances in which State Farm asserted that certain bills were paid, this issue is unpreserved and reviewed for plain error. *Morales*, 279 Mich App at 732; *Hogg*, 307 Mich App at 406.

The record indicates that State Farm issued checks for these providers, but the providers rejected the payments because they disagreed with the amounts. Plaintiff's argument on appeal consists of the following assertions: (1) State Farm made partial payments to Mendelson Kornblum that were not accepted; (2) State Farm did not pay or attempt to pay Detroit Anesthesia Group, which contracted with Mendelson Kornblum to provide anesthesia for plaintiff's epidural steroid injections; (3) the trial court denied plaintiff's request to preclude State Farm from stating that it paid bills when the payments were rejected; (4) State Farm argued at trial that bills were paid; (5) State Farm did not issue payments for the dates of service that were at issue in the trial, because the issued check for $5,491.04 paid for services rendered on November 20, 2018.

Plaintiff's third and fourth assertions are not supported by the record. Plaintiff fails to acknowledge that the trial court *denied* State Farm's motion in limine to preclude plaintiff from presenting claims for bills for which the service provider rejected payment. Plaintiff inaccurately suggests that State Farm asserted to the jury that these bills were paid, and thus misled the jury into believing that the bills had been paid. Plaintiff asserts that State Farm made this misleading argument on the second, fourth, and fifth days of trial, but she does not offer any citations to the record showing where State Farm allegedly made these misleading statements. "An appellant may

-8-

not merely announce h[er] position and leave it to this Court to discover and rationalize the basis for h[er] claims, . . . nor may [s]he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). We are unable to find instances of State Farm making arguments in the manner described by plaintiff.

Although State Farm's counsel remarked in opening argument that "plaintiff and her counsel decided not to cash those checks so that they could bring them into trial here today to wave them around and – and claim them as unpaid bills," this remark did not constitute a representation of payment.

The record discloses that plaintiff called State Farm's claims representative, Julie Higley, as an adverse witness. Plaintiff elicited Higley's testimony regarding the rejected checks. Higley testified that State Farm issued a check to Dr. Inwald for less than the $1,800 he billed, but the proffered payment was not accepted. Higley stated that State Farm paid the Mendelson Kornblum bill with interest. Plaintiff asked, "You attempted to pay, right?" Higley answered, "A draft was issued, yes." Higley agreed that the jury would determine whether the physician's charges were reasonable and entitled to more than the amount that State Farm determined was reasonable. Higley's testimony in response to plaintiff's questions cannot fairly be characterized as an improper argument or assertion by State Farm. It was clear from Higley's testimony that the parties acknowledged State Farm's issuance of a check, but disputed whether State Farm's payment was reasonable. State Farm never represented that it had paid or attempted to pay Detroit Anesthesia Group. Indeed, Higley acknowledged that Detroit Anesthesia Group's bill of $3,925 was not paid.

Finally, State Farm did not make misleading statements in its closing argument. The parties and the trial court addressed how this issue could be argued in closing. Plaintiff's counsel indicated that he would not object if State Farm argued that "they attempted to pay the bills," but argued that it would be misleading if State Farm argued, " 'We paid these bills.' " State Farm's counsel stated that if the trial court instructed her that she was "not allowed to say those were paid, I won't say it." The trial court allowed her to say, "they attempted to pay them at a reasonable rate." In closing argument, plaintiff's counsel stated, "State Farm's going to tell you they attempted . . . to make a payment," and that State Farm "attempted to pay $6,000.00 on a $13,985.00 bill." In her own closing argument, State Farm's counsel referred to Higley's testimony that she "attempted to pay those bills," which was consistent with the trial court's ruling.

Plaintiff's assertion that State Farm did not issue payments for the dates of service that were at issue at trial because the $5,491.04 check paid for services rendered on November 20, 2018, is addressed in section II-F, *infra*.

In sum, plaintiff has not demonstrated that State Farm improperly argued or misled the jury into believing that it had paid certain provider's bills.

## E.  ADMISSIBILITY OF A NOTE IN PLAINTIFF'S MEDICAL RECORDS

Plaintiff argues that the trial court erred by denying her motion to exclude from evidence a note in plaintiff's medical records indicating that approximately a month before the accident, she

complained of "severe neck pain" that radiated down her back. We review the trial court's decision to admit this evidence for an abuse of discretion. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007). An abuse of discretion occurs when a decision falls outside the range of principled outcomes. *Maldonado*, 476 Mich at 388. Preliminary questions of law are reviewed de novo. *Barnett*, 478 Mich at 159.

The trial court denied plaintiff's motion to exclude from evidence a note in plaintiff's medical records that stated:

> Patient Case – Question – 09/14/16
>
> Notes – I see Dr. Montgomery and I recently had a visit. I was wondering if it was normal that I am unable to sit or stand for more than ten minutes without pain. I also am starting to have severe neck pain, it radiates to the upper part of my back. I am not sure if this has to do with the nerve damages I have causing all the pain, I know that I still lose feeling on my right side, down my leg. I am just wondering because it is hard to clean or shop without my back hurting and was wondering if there is something I might be able to do. Thanks. Kathy Hahn.

Plaintiff challenges the admissibility of this note on grounds of authentication, hearsay, and relevancy.

### 1. AUTHENTICATION

MRE 901(a) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

In *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155; 908 NW2d 319 (2017), this Court explained as follows:

> Michigan courts have interpreted MRE 901(a) as requiring the proponent only to make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be. See [*People v Mitchell*, 37 Mich App 351, 355-356; 194 NW2d 514 (1971)]. See also Gillespie, Michigan Criminal Law & Procedure, Practice Desk Book (2d ed.), § 9.2, p 472 ("[T]he question of admissibility turns on an initial decision by the court that a reasonable juror might find for the proponent on the question."). Once the proponent of the evidence has made the prima facie showing, the evidence is authenticated under MRE 901(a) and may be submitted to the jury. See *Mitchell*, 37 Mich App at 356. At this first stage, the opponent may oppose authentication by arguing that a reasonable juror could not conclude that the proffered evidence is what the proponent claims it to be.

State Farm claimed that the note represented a message submitted by plaintiff describing her medical condition on September 14, 2016, which was approximately a month before her

automobile accident. The message itself is dated September 14, 2016, which supports a finding that it was written on that date. Although plaintiff argues that there is no means of determining who left the message, plaintiff's name is listed as the author of the message, and the message also refers to Dr. Montgomery as the author's doctor, and Dr. Montgomery was in fact plaintiff's doctor. Further, Catherine Hadley, who works for the medical records department for Michigan Orthopedic Surgeons, of whom Dr. Montgomery is a member, testified that the message was entered via plaintiff's password-protected patient-portal, which placed it in plaintiff's medical records. Plaintiff denied understanding how the portal worked, but she acknowledged that she had used the portal at least once or twice, and understood that it was a password-protected communication system. This evidence was sufficient to allow a reasonable juror to conclude that the message was what State Farm claimed it to be, namely, a message that plaintiff submitted through the patient-portal system on September 14, 2016, describing her medical condition on that date. Accordingly, the trial court did not abuse its discretion by finding that the message had been sufficiently authenticated.

## 2. HEARSAY

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *In re Martin*, 316 Mich App 73, 86; 896 NW2d 452 (2016), quoting MRE 801(c). Generally, hearsay is not admissible except as provided by the Rules of Evidence. MRE 802. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." MRE 805. A statement is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity . . . ." MRE 801(d)(2).

As noted, State Farm introduced evidence that the disputed message was written by plaintiff, who submitted it through her medical provider's patient-portal, which placed it in her medical records. As a message authored by plaintiff, a party-opponent, the message was not hearsay under MRE 801(d)(2). State Farm further argues that the message's inclusion in plaintiff's medical records does not render it inadmissible hearsay because the records qualify for admission under the hearsay exceptions for statements made for purposes of medical treatment, MRE 803(4), and statements in records of regularly conducted activity, MRE 803(6). We agree that these two exceptions were both applicable. The message was sent to plaintiff's healthcare provider, describes various physical ailments, and asks whether anything can be done for the ailments. Thus, the message qualifies as a statement for the purpose of obtaining medical treatment. In addition, Hadley testified that patient information entered into the patient-portal is kept as part of the practice's patient records. Accordingly, the trial court did not err by rejecting plaintiff's argument that the message was inadmissible hearsay.

## 3. RELEVANCY AND PREJUDICE

Plaintiff also argues that the message should have been excluded because it was not relevant. Under MRE 401, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." At trial, plaintiff sought benefits for treatment of head and neck pain. She denied reporting any neck pain to Dr. Montgomery before

the accident. State Farm contested the extent and duration of plaintiff's injuries and the causal connection between the automobile collision and the injuries she claimed. Evidence that plaintiff complained of "severe neck pain" approximately a month before the accident was relevant to the issue whether her continued treatment for neck pain was causally related to the motor vehicle accident.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. In applying MRE 403, "unfair prejudice" does not mean evidence that is "damaging," but rather evidence that is unfairly prejudicial, such as when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). Plaintiff argues that the message's probative value was negligible because the authorship of the message was unknown and there was no evidence explaining why it was referenced in Dr. Surapaneni's records on November 2, 2016. As explained, however, State Farm introduced evidence to support a finding that plaintiff authored the message, and Hadley explained how the message was entered through the patient-portal, becoming a part of plaintiff's medical records. Plaintiff's denial that she wrote the message created an issue of fact for the jury to resolve. Otherwise, the message was highly relevant to a contested issue at trial, that being whether plaintiff's neck pain was causally related to the October 2016 accident. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

For these reasons, we reject plaintiff's challenges to the admission of the contested note in plaintiff's medical records.

## F. JNOV OR NEW TRIAL

Plaintiff argues that the trial court erred by denying her motion for JNOV or a new trial. We disagree.

A trial court's decision regarding a motion for JNOV is reviewed de novo. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 29; 930 NW2d 393 (2018). "This Court will view all legitimate inferences from the evidence in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). "Only if the evidence so viewed fails to establish a claim as a matter of law is JNOV appropriate." *Id*. (quotation marks and citation omitted). A trial court's decision regarding a motion for a new trial is reviewed for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001).

A motion for JNOV should be granted "only when there was insufficient evidence presented to create an issue for the jury." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999). Plaintiff argues that there are inconsistencies in the jury's verdicts, entitling her to JNOV. "The Michigan Supreme Court has repeatedly held that the jury's verdict must be upheld, even [if] it is arguably inconsistent, if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 227; 755 NW2d 686 (2008) (alteration in original), quoting *Allard v State Farm Ins Co*, 271 Mich App 394, 407; 722 NW2d 268 (2006). "Furthermore, a reviewing court must make 'every attempt . . . to harmonize a jury's verdicts. Only where verdicts are so

logically and legally inconsistent that they cannot be reconciled will they be side aside.' " *Moore*, 279 Mich App at 227, quoting *Allard*, 271 Mich App at 407.

Plaintiff argues that the jury's verdict requiring acceptance of State Farm's $5,495 check to Mendelson Kornblum is inconsistent with the trial court's February 14, 2019 order precluding plaintiff from claiming reimbursement of expenses incurred after October 5, 2018, given that the $5,495 check was issued as payment for services after October 5, 2018. Plaintiff also argues that this award conflicts with the jury's finding that payments were not overdue because the $5,495 payment included interest. However, "money is fungible." *Michigan Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 405-406; 522 NW2d 643 (1994), quoting **M***Maine Beer & Wine Wholesalers Ass'n v Maine*, 619 A2d 94, 98 (Me, 1993), quoting *United States v Sperry Corp*, 493 US 52, 62 n 9; 110 S Ct 387; 107 L Ed 2d 290 (1989). Although the amount of the specific check corresponded to a bill issued for services rendered after the cutoff date, it paid a portion of expenses plaintiff incurred for treatment with Mendelson Kornblum in the time period following State Farm's denial of benefits. The verdict can therefore be reconciled with the evidence. To the extent that the jury's finding is in conflict with the February 14, 2019 order, the error inured to plaintiff's benefit because she received compensation for expenses not allowed. But this error would not justify JNOV with respect to other items for which plaintiff sought recovery and the jury declined to award any damages because there were issues of fact concerning the nature, extent, and duration of plaintiff's injuries, and whether all of her injuries were causally related to the automobile accident. The jury's decision to award plaintiff only a portion of her claimed expenses is not inconsistent with the evidence.

Plaintiff also argues that the jury's failure to award her mileage expenses is inconsistent with the jury's finding that she incurred expenses that arose from the automobile accident. However, Higley testified that plaintiff failed to submit requests for mileage reimbursement for the period in question and that State Farm does not calculate and pay an insured's travel expenses on its own initiative. This aspect of the jury's verdict is consistent with Higley's testimony.

Motions for a new trial are governed by MCR 2.611(A)(1)(a), which provides grounds for a new trial "to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected," for reasons of "[i]rregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial." Plaintiff's rights were not materially affected by the jury's finding that State Farm's check for $5,495 should be tendered to plaintiff for payment to Mendelson Kornblum. Again, to the extent that this award could be deemed improper because the $5,495 check was issued for services outside the period for which plaintiff could seek recovery, the error inured to plaintiff's benefit, and it does not otherwise establish any irregularity with respect to the jury's decision not to award damages for other items for which plaintiff sought recovery, especially considering the issues of fact regarding the nature and extent of plaintiff's injuries, and whether all of her injuries were causally related to the automobile accident. Accordingly, the trial court did not abuse its discretion by denying plaintiff's motion for a new trial.

## G. AWARD OF CASE EVALUATION SANCTIONS

The trial court granted State Farm's motion for case evaluation sanctions and awarded State Farm taxable costs of $6,520.35, and reasonable attorney fees of $93,003, for a total award of

$99,523.35.  Plaintiff argues that the trial court erred by determining that State Farm was entitled to an award of case evaluation sanctions, and also erred in its determination of the amount of sanctions.  We disagree.

"A trial court's decision whether to grant case evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo."  *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).  However, a trial court's decision to deny case evaluation sanctions under the interest-of-justice exception in MCR 2.403(O)(11), when applicable, is reviewed for an abuse of discretion.  *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 465; 702 NW2d 671 (2005).  A trial court's determination of the amount of a fee award is reviewed for an abuse of discretion.  *In re Attorney Fees & Costs*, 233 Mich App 694, 705; 593 NW2d 589 (1999).  The court's underlying findings of fact concerning attorney fees are reviewed for clear error.  *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012).  "Clear error occurs when this Court is left with a definite and firm conviction that a mistake has been made."  *Fed Home Loan Mtg Corp v Werme*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350981), slip op at 3, lv pending.  Issues involving the proper interpretation and application of a court rule are reviewed de novo.  *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

With respect to the taxation of costs, plaintiff argues that State Farm failed to comply with MCR 2.625(F)(2), which provides:

> (F) Procedure for Taxing Costs at the Time of Judgment.
>
> * * *
>
> (2) When costs are to be taxed by the clerk, the party entitled to costs must present to the clerk, within 28 days after the judgment is signed, or within 28 days after entry of an order denying a motion for new trial, a motion to set aside the judgment, a motion for rehearing or reconsideration, or a motion for other post judgment relief except a motion under MCR 2.612(C),
>
> (a) a bill of costs conforming to subrule (G),
>
> (b) a copy of the bill of costs for each other party, and
>
> (c) a list of the names and addresses of the attorneys for each party or of parties not represented by attorneys.
>
> In addition, the party presenting the bill of costs shall immediately serve a copy of the bill and any accompanying affidavits on the other parties. Failure to present a bill of costs within the time prescribed constitutes a waiver of the right to costs.

Plaintiff's reliance on MCR 2.625(F)(2) is misplaced.  Subrule (F)(2) provides that "[*w*]*hen costs are to be taxed by the clerk*," the party seeking costs "must present to the clerk . . . (a) a bill of costs . . . , (b) a copy of the bill of costs for each other party, and (c) a list of the names and

-14-

addresses of the attorneys . . . ." This subrule does not apply because State Farm did not seek costs to be taxed by the clerk.

Plaintiff also challenges the trial court's award of case evaluation sanctions on the basis that the imposition of sanctions was contrary to the interest of justice. Plaintiff notes that after the case evaluation award, the trial court's rulings on different issues significantly limited the claims for which she could seek recovery, which she contends made it impossible for her to avoid case evaluation sanctions. Therefore, she argues, the trial court should have considered these circumstances and declined to award case evaluation sanctions in the interest of justice. We disagree.

MCR 2.403(O)(1) imposes a sanction on a party who rejects a case evaluation award and subsequently fails to obtain a more favorable verdict. For purposes of subrule (O)(1), a verdict includes:

> (a) a jury verdict,
>
> (b) a judgment by the court after a nonjury trial,
>
> (c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation. [MCR 2.403(O)(2).]

Plaintiff does not dispute that the jury verdict in this case—awarding plaintiff $600 to Dr. Inwald in addition to the previously tendered $1,200 payment, and requiring plaintiff to accept the $5,491 check for Mendelson Kornblum—was not more favorable to plaintiff than the case evaluation award of $55,000. Contrary to what plaintiff argues, however, the trial court did not have discretion to refuse to award case evaluation sanctions.

MCR 2.403(O)(1) provides that the rejecting party "*must* pay the opposing party's actual costs" if the verdict is less favorable. "The use of the word 'must' indicates that the imposition of these sanctions is mandatory." *Allard*, 271 Mich App at 272. We reject plaintiff's argument that the trial court was permitted to refuse to award case evaluation sanctions under MCR 2.403(O)(11), which states that "[i]f the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." This exception was not applicable because the verdict in this case was the result of a judgment entered by the court after a jury trial, MCR 2.403(O)(2)(b), and not the result of a ruling on a motion, MCR 2.403(O)(2)(c). The earlier order granting State Farm's motion in limine and restricting the time periods of plaintiff's claims was not a judgment or a verdict. See, e.g., *Harbour*, 266 Mich App at 468 (affirming a trial court's denial of case evaluation sanctions based on the interest-of-justice exception where the defendant prevailed on a motion for a directed verdict at trial). Therefore, the trial court did not have discretion to refuse to award case evaluation sanctions under the interest-of-justice exception.

Plaintiff also argues that MCR 2.403(O)(5) allowed the trial court to deny costs if an award of costs would be unfair. This subrule provides:

> If the verdict awards equitable relief, costs may be awarded if the court determines that

-15-

(a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, or, in situations where both parties have rejected the evaluation, the verdict in favor of the party seeking costs is more favorable than the case evaluation, and

(b) it is fair to award costs under all of the circumstances.

Subrule (O)(5) applies when a verdict includes an award of equitable relief. Plaintiff asserts that the jury's verdict requiring her to accept State Farm's previously tendered checks qualifies as equitable relief that allowed the trial court to deny costs under subrule (O)(5) if it determined that an award of costs was unfair. We again disagree. Plaintiff sought an award of monetary damages for allowable expenses. The jury's verdict determined the monetary damages to which plaintiff was entitled. The fact that the jury decided that these damages were to be satisfied in part by requiring plaintiff to accept State Farm's previously issued checks does not transform the jury's verdict from an award of monetary relief to equitable relief. Therefore, subrule (O)(5) is not applicable.

Plaintiff also challenges the trial court's calculation of the amount of actual costs to be awarded as case evaluation sanctions. For purposes of MCR 2.403, "actual costs" are "those costs taxable in any civil action" and "a reasonable attorney fee . . . for services necessitated by the rejection of the case evaluation." MCR 2.403(O)(6). "The party requesting attorney fees bears the burden of proving that they were incurred and that they are reasonable." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 356; 941 NW2d 685 (2019). The fee applicant "must submit detailed billing records, which the court must examine and the opposing parties may contest for reasonableness." *Id*. at 356 (quotation marks and citation omitted). The applicant must support the claimed hours with evidentiary support. *Id*. Generally, the trial court should hold an evidentiary hearing if a party challenges the reasonableness of the fees claimed, but "if the parties created a sufficient record to review the issue, an evidentiary hearing is not required." *Id*. at 359 (quotation marks and citation omitted).

In *Smith*, 481 Mich 519, our Supreme Court defined the process by which a trial court is to determine a reasonable attorney fee for purposes of MCR 2.403(O). First, the trial court must begin its analysis "by determining the fee customarily charged in the locality for similar legal services." *Id.* at 530. Second, having determined the proper hourly rate, the trial court must then multiply that rate "by the reasonable number of hours expended in the case" to determine "the starting point for calculating a reasonable attorney fee." *Id*. at 531. Third, the trial court should then "consider the remaining *Wood*/MRPC[4] factors to determine whether an up or down adjustment is appropriate." *Id*. In *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 282; 884 NW2d 257 (2016), the Supreme Court distilled the remaining *Wood* and MRPC 1.5(a) factors as follows:

---

[4] *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), and MRPC 1.5(a).

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id.* at 282.]

Plaintiff argues that the trial court's determination of a reasonable attorney fee for State Farm's attorneys was erroneous because it was inconsistent with its prior order awarding costs and attorney fees to Big Five. In its prior order, the trial court found that an hourly rate of $175 was appropriate for an attorney in Oakland County with 33 years of experience. Plaintiff states that State Farm's lead attorney and its other attorneys had "significantly less" than 33 years' experience, but the court awarded lead counsel an hourly rate of $300 and awarded the other attorneys an hourly rate of $200. Apart from pointing out the differences in the hourly rates, however, plaintiff does not argue that the trial court's determinations of appropriate hourly rates were unsupported by the evidence. She also ignores that the previous ruling involved a different type of claim, a different defendant, and a different attorney.

"To evaluate whether an attorney fee is reasonable, courts begin by determining the fee customarily charged in the locality for similar legal services. To determine this amount, courts should use reliable surveys or other credible evidence of the legal market." *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 590-591; 884 NW2d 587 (2015) (quotation marks and citation omitted). In this case, State Farm submitted "the State Bar of Michigan 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report," and the trial court considered that data in determining a reasonable attorney fee. Plaintiff has failed to demonstrate that the trial court's rate determination was not supported by evidence.

With regard to the reasonable number of hours expended on the case, the trial court examined both State Farm's "Detail Fee Transaction File List" and plaintiff's objections, and it agreed that some of the expended hours were unreasonable. The court described the categories of services that it considered unreasonable, and then identified the number of reasonable hours expended by each attorney or paralegal. Although plaintiff has compiled her own tables to denote the number of attorney hours that she believes should have been stricken as unreasonable, we are not left with "a definite and firm conviction" that the court's calculations were erroneous.

III. BIG FIVE ENTERTAINMENT

## A. PLAINTIFF'S MOTION TO ADJOURN

Big Five moved for summary disposition on April 6, 2018. On April 11, 2018, the trial court issued a scheduling order stating that plaintiff was required to file a response by May 9, 2018, and that the motion would be heard on May 23, 2018. Plaintiff did not file a response to the motion for summary disposition, but filed a motion on May 15, 2018, to adjourn the summary disposition hearing and request leave to take Vanduker's deposition. The trial court denied the motion to adjourn in an order dated May 17, 2018, but allowed plaintiff to take Vanduker's deposition, and granted Big Five's motion for summary disposition without oral argument in an order dated May 18, 2018.

Plaintiff argues that the trial court erred by denying her motion to adjourn. We review the trial court's decision on a motion for adjournment for an abuse of discretion. *Pungo v Blue Harvest Farms, LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018).

Plaintiff's motion requested an adjournment for the purpose of taking Vanduker's deposition. Big Five argues that the motion was a thinly-veiled attempt to evade plaintiff's failure to file a timely response to its motion for summary disposition. Plaintiff failed to file a response to Big Five's motion by the cutoff date in the trial court's scheduling order, and even the motion to adjourn was filed after the cutoff date. Other than mentioning that plaintiff had changed attorneys, plaintiff's motion to adjourn did not offer an explanation for why she had failed to obtain Vanduker's deposition earlier, or why she waited until after the response cutoff date to file her motion to adjourn and address her need for a deposition. A trial court has discretion to enforce its scheduling order. See *EDI Holdings LLC v Lear Corp*, 469 Mich 1021, 1021; 678 NW2d 440 (2004). Plaintiff's motion to adjourn also failed to offer any factual basis for her belief that Vanduker's deposition was likely to produce factual support for her dramshop claim. Big Five had already obtained and submitted an affidavit from Vanduker, who averred "I was not at Augie's that night and I was not served alcoholic beverages at Augie's Bar & Grill on the night of the accident." Plaintiff did not identify any factual evidence supporting a contrary belief. Under these circumstances, the trial court did not abuse its discretion by denying plaintiff's motion for an adjournment.

On appeal, plaintiff offers additional reasons why she believes an adjournment of Big Five's summary disposition motion would have been appropriate. Although plaintiff raised these reasons in her brief in opposition to Big Five's motion for costs and attorney fees, she did not raise them in her motion to adjourn, or in a motion for reconsideration or relief from the summary disposition order. Plaintiff cannot properly rely on reasons that she failed to present to the trial court in her motion for an adjournment to justify her request for an adjournment, or to demonstrate that the trial court abused its discretion by denying that motion.

## B. SUMMARY DISPOSITION

Plaintiff also argues that Big Five was not entitled to summary disposition. We disagree. We review the trial court's decision on a motion for summary disposition de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Motions brought under MCR 2.116(C)(10) should be granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact

exists when the record, giving the benefit of a reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. This Court must consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

The dramshop act provides that a "retail licensee shall not directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to an individual who is visibly intoxicated." MCL 436.1801(1). Further,

> [A]n individual who suffers damage or who is personally injured by a . . . visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the . . . visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, has a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. [MCL 436.1801(2).]

"A person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer." *Miller v Ochampaugh*, 191 Mich App 48, 57; 477 NW2d 105 (1991).

Plaintiff's dramshop claim required her to prove that Vanduker was a customer at Augie's Bar on the night of October 20-21, 2016, and that Augie's Bar's employees sold, furnished, or gave alcoholic beverages to Vanduker when he was visibly intoxicated. In support of its motion for summary disposition, Big Five submitted an affidavit from Vanduker, who denied being present at the bar on the night in question. Because Big Five established factual support for its claim that Vanduker was never present or served alcohol at its bar on the night of the accident, to avoid summary disposition, plaintiff was required to present evidence establishing a genuine issue of material fact regarding whether Vanduker was present and served alcohol at the bar that night, and she was not permitted to rely on the allegations in her pleadings. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). As noted, plaintiff never filed a response to Big Five's motion for summary disposition. Because plaintiff failed to present documentary evidence establishing the existence of a material factual dispute, the trial court properly granted Big Five's motion.

On appeal, plaintiff argues that she has sufficient circumstantial evidence to establish a question of fact whether Vanduker was served alcohol at Augie's Bar on the night of the accident. However, because plaintiff failed to present her evidence to the trial court in response to Big Five's motion, it is not proper to consider this evidence on appeal. Even if the evidence is considered, however, it does not establish a genuine issue of material fact regarding whether Vanduker was present and served alcohol at Augie's Bar on the night of the accident.

Plaintiff relies on the proximity of the bar to the location of the accident and the location where the police pulled over Vanduker's vehicle. Plaintiff observes that all three locations are situated in a straight line along southbound John R Road. She also states that there are no other bars in the area. "Circumstantial evidence may be sufficient to establish a case." *Libralter Plastics v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). "However, parties

opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Id*. "A conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Id*. Plaintiff's selection of Augie's Bar as the retail licensee that served alcohol to Vanduker is consistent with the known evidence of the location of the accident, but it is not deducible as a reasonable inference because there are other locations or venues where Vanduker might have become intoxicated. It is equally plausible that Vanduker could have consumed alcohol at a restaurant or another bar outside the range that plaintiff regards as the relevant area, or that he might have consumed alcohol in a private home, a parking lot, a public park, or some other location. Plaintiff offers no evidence excluding other potential locations or for inferring that Augie's Bar is a more probable location for Vanduker's alcohol consumption than other possible locations.

Plaintiff also argues that summary disposition was premature because discovery was not complete. "Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). "However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Id.* "[A] party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Id*. at 292-293. Plaintiff does not specifically explain how further discovery would have produced proof that Vanduker was in the bar. She does not explain any means of identifying other persons present in Augie's Bar to obtain information from them, and she does not offer any support for her belief that she might obtain security camera recordings showing persons present at Augie's Bar in the relevant time frame. Moreover, she did not submit the affidavits required by MCR 2.116(H) to identify the probable testimony of persons whose affidavit she had not been able to obtain and the reason for her belief that these persons would offer favorable evidence.

On appeal, plaintiff relies on the deposition of Dorothy Peterson, which was taken approximately five months after the trial court granted Big Five's motion. Because plaintiff did not present this evidence in opposition to Big Five's motion, or submit any affidavit in accordance with MCR 2.116(H) identifying Peterson as a witness whose testimony was needed to establish a question of fact, it is improper to rely on this testimony on appeal. In any event, we find no merit to plaintiff's argument that Peterson's testimony establishes an issue of fact whether Vanduker was present and served alcohol at Augie's Bar on the night of the accident.

Peterson testified that she was married to defendant Robert Peterson in 2016, but she was also involved in a relationship with Vanduker. She denied giving Vanduker permission to drive Robert Peterson's vehicle and believed he took the keys while she was asleep. Contrary to plaintiff's assertion that Peterson testified that Vanduker did not drink in her home because she did not allow him to keep alcohol there, Peterson actually testified that if Vanduker did drink at her house, "it wasn't very much" because she did not drink. When asked if she kept beer in her refrigerator for Vanduker, Peterson replied, "No, not really no." She stated, "I don't remember him keeping beer in the refrigerator. He might have had some gin or something that he kept hidden,

you know. He didn't drink around me." Peterson had not heard of Augie's Bar. She knew the bar that Vanduker and his friends went to, but did not know the name. When asked if Vanduker went to bars on John R, she replied, "I'm sure he did, yes. We lived pretty close to John R." Viewed in a light most favorable to plaintiff, Peterson's testimony is merely a tentative exclusion of her own home as the location where Vanduker drank to excess. It does not provide any basis for reasonably inferring that Augie's Bar was the probable location where Vanduker was present and served alcohol on the night of the accident. Thus, Peterson's deposition testimony would not have precluded summary disposition for Big Five.

Further, plaintiff failed to present any competent evidence to support an inference that even if Vanduker was present at Augie's Bar on the night of the accident, he was served alcohol there while visibly intoxicated. She offered no evidence regarding Vanduker's behavior before the collision. Although he was visibly intoxicated when he got out of his vehicle during the traffic stop after the accident, this is not enough to draw any inferences regarding his appearance and conduct at the time he received alcoholic beverages. See *Reed v Breton*, 475 Mich 531, 542-543; 718 NW2d 770 (2006).

Plaintiff also complains that the trial court granted Big Five's motion for summary disposition without oral argument. The trial court had discretion to dispense with oral argument under MCR 2.119(E)(3). Because plaintiff failed to file a response to Big Five's motion, it was not an abuse of discretion for the court to decide the motion without oral argument.

For all of these reasons, we reject plaintiff's argument that the trial court erred by granting Big Five's motion for summary disposition.

## C. SANCTIONS FOR FRIVOLOUS CLAIM

Plaintiff also argues that the trial court erred by granting Big Five's motion for costs and attorney fees on the basis that her dramshop claim was frivolous. We disagree.

A trial court's decision whether to impose sanctions pursuant to MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591 is reviewed for an abuse of discretion. *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015); *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013). The trial court's factual findings are reviewed for clear error. *Fette*, 310 Mich App at 549. "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 75-76; 903 NW2d 197 (2017).

Big Five moved for sanctions under MCL 600.2591, MCR 2.625, and MCR 2.114.[5] MCR 2.114, as in effect at the time Big Five moved for summary disposition and for imposition of costs, provided, in pertinent part as follows:

---

[5] MCR 2.114 was repealed, effective September 1, 2018. See 501 Mich cxxxvii (2018). Former MCR 2.114 has been substantially relocated to current MCR 1.109(E).

-21-

(D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(E) Sanctions of Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own imitative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

"[S]anctions are warranted under MCR 2.114 where a plaintiff asserts claims without any reasonable basis in law or fact for those claims, or where the claims are asserted for an improper purpose." *Fette*, 310 Mich App at 550. "In determining whether a claim was frivolous, courts look at the circumstances at the time the claim was asserted." *Id.*

MCR 2.625(A)(2) provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded by MCL 600.2591." MCL 600.2591(1) provides as follows:

Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

Under MCL 600.2591(3)(a), an action is frivolous if one of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The trial court did not err by granting Big Five's motion for costs and attorney fees under these provisions. Plaintiff's dramshop claim against Big Five was based solely on her conjecture that Vanduker consumed alcohol at Augie's Bar because of its location along the road on which Vanduker was driving at the time of the accident. This mere location did not provide a reasonable basis for believing that Vanduker had been inside Augie's Bar that night, or that he was served alcohol there while visibly intoxicated. Plaintiff never identified any other facts that would provide a reasonable basis for believing that Augie's Bar had illegally served Vanduker alcohol on the night of the accident. Accordingly, the trial court did not clearly err by finding that plaintiff's dramshop claim was frivolous.

## IV. CONCLUSION

None of plaintiff's arguments on appeal have merit. Accordingly, we affirm.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan